## MATTER OF THE

In Visa Petition Proceedings

A-14048590

*Decided by Board September 13, and December 16, 1965*

Petition by a naturalized U.S. citizen, born out of wedlock, to accord preference status under section 203(a)(2), Immigration and Nationality Act, as amended, on behalf of beneficiary, her stepmother through marriage to her natural father when petitioner was 4 years of age, is granted since a valid stepchild-stepparent relationship exists, petitioner's paternity having been acknowledged by her natural father shortly after her birth and following the death of her natural mother in 1931; a bona fide family unit between petitioner, beneficiary, and her natural father having existed until petitioner's immigration to the United States in 1953; and close family ties between petitioner and beneficiary have continued to the present day. [*Matter of W—*, 7 I. & N. Dec. 685, overruled; cf. *Matter of Aleo*, Int. Dec. No. 1542.]

### BEFORE THE BOARD

The case comes forward on motion of the petitioner requesting the Board to reconsider its prior denial of the visa petition because of the decision in *Nation v. Esperdy*, 239 F. Supp. 531 (S.D. N.Y., 1965).

The petitioner, a native of Batavia, West Java, Indonesia, born on April 12, 1931, female, a naturalized citizen of the United States, seeks preference status under section 203(a)(2) of the Immigration and Nationality Act on behalf of the beneficiary, her stepmother. The beneficiary is a native and citizen of Djakarta, West Java, Indonesia, born on November 8, 1918. The petitioner was born out of wedlock, her natural mother died in Indonesia on May 26, 1931, her natural father acknowledged parentage on June 5, 1931, and tne natural father married the beneficiary on March 31, 1935, when the petitioner was about four years of age.

We originally considered this case on January 24, 1964, on appeal from the decision of the District Director, Detroit District, dated November 22, 1963, denying the visa petition for the reason that the beneficiary is not a parent as defined in section 101(b)(2) of the Immigration and Nationality Act in that the petitioner fails to meet

the status of a stepchild as defined in section 101(b)(1)(B) of the Act; and that a child born out of wedlock derives no status as a stepchild by reason of the marriage of the natural father to a person other than the child's mother. In affirming this order of the District Director, we relied on *Matter of W—*, 7 I. & N. Dec. 685. However, we remanded the case to explore the possibility of legitimation under the law which prevailed in Batavia, West Java, Indonesia, which was the former Netherlands East Indies at the time of the petitioner's birth. On October 22, 1964 we found that the legitimation process appeared to have been incomplete, since according to Article 275 of the Civil Code for Indonesia, the legitimation of a legally acknowledged child requires a declaration of the Governor-General (and at present the President of the Republic of Indonesia) after consultation with the Supreme Court, and dismissed the appeal.

The term "child" is defined in section 101(b)(1)(B) to include a stepchild, whether or not born out of wedlock, provided the child had not reached the age of 18 years at the time the marriage creating the status of stepchild occurred. In *Matter of W—*, 7 I. & N. Dec. 685, we traced the legislation as amended by the Act of September 11, 1917, which at the same time, in section 101(b)(1)(B), amended the term "child" to include an illegitimate child, by, to whom, or on whose behalf, a status, privilege or benefit is sought by virtue of the relationship of the child to its natural mother. We concluded that the amendatory legislation was intended to clarify the law so that a child born out of wedlock in relation to its mother could be included in the term "stepchild" and thereby enjoy the same immigration status as other stepchildren but the amendment did not call for any change in the prevailing administrative view that a child born out of wedlock derives no benefit, status or privilege under the immigration laws in relation to its natural father, and concluded that the illegitimate child of a father married to a United States citizen was not the latter's stepchild and could not qualify for nonquota or preference status.

In the case of *Nation* v. *Esperdy*, 239 F. Supp. 531, the court for the Southern District of New York examined the legislative history and concluded that the respective committee reports were not conclusive but tended to suggest conflicting interpretations. In view of the express congressional policy of keeping family units together, and in the absence of special language to the contrary, the court adopted the "plain meaning" rule that when Congress in 1957 defined stepchild in the broad language of "whether or not born out of wedlock", this definition is to be applied literally, and includes any stepchild previously born illegitimately to the mother or to the father.

The Government declined to appeal the decision in *Nation v. Esperdy, supra.* Our prior holding in *Matter of W—,* 7 I. & N. Dec. 685, is therefore considered overruled.

In the present case the petitioner was born out of wedlock of an Indonesian father who acknowledged parentage shortly after her birth in 1931 and who married the beneficiary in 1935 when the peti-. tioner was four years old. The petitioner and the beneficiary therefore are regarded as persons having the status of stepchild and stepmother respectively under the rule laid down in *Nation v. Esperdy, supra.* The visa petition will be approved.

ORDER: It is ordered that the visa petition be approved for preference status on behalf of the beneficiary.

## BEFORE THE BOARD

The case comes forward on motion of the Immigration and Naturalization Service dated October 29, 1965 asking for reconsideration of the Board's order of September 13, 1965 approving a visa petition for preference status on behalf of the beneficiary.

The record relates to a visa petition filed by the petitioner, a native of Batavia, West Java, Indonesia, a naturalized citizen of the United States, 34 years old, married, female, who seeks preference quota status on behalf of her alleged stepmother, a native of Djarkata, West Java, Indonesia, 47 years old, female. The petitioner in a sworn statement executed before a Service officer on March 19, 1964 acknowledged that she was born out of wedlock to Kian Kok Lie and Bo Tan Lie, both natives of the Chinese race. The petitioner's natural mother died in Indonesia (Java) on May 26, 1931, her natural father acknowledged paternity on June 5, 1931 and the natural father married the beneficiary, the alleged stepmother, on March 31, 1935 when the petitioner was less than four years of age. Documentary evidence has been submitted to support these allegations.

The visa petition was originally denied by the District Director, Detroit District, on November 22, 1963 for the reason that the beneficiary was not a parent as defined in section 101(b)(2) of the Immigration and Nationality Act in that the petitioner failed to meet the status of a stepchild as defined in section 101(b)(1)(B) of the Act; and that a child born out of wedlock derives no status as a stepchild by reason of the marriage of the natural father to a person other than the child's mother. On January 24, 1964 we remanded the case for a statement from the petitioner regarding the religion and race of herself and of her natural parents and to explore the possibility of legitimation under the Law which prevailed in Batavia, West Java, which was the former Netherlands East Indies at the time of

the petitioner's birth. On October 22, 1964 we again considered the case and found that acknowledgement of a child under Indonesian Law is not equivalent to legitimation, since according to Article 275 of the Civil Code of Indonesia of April 30, 1947, legitimation of a legally acknowledged child requires a declaration of the Governor-General (at present, the President of the Republic of Indonesia) after consultation with the Supreme Court. No evidence had been submitted that this legitimation process had ever been completed and the appeal was dismissed. (*Matter of The*, Int. Dec. No. 1400.)

On September 13, 1965 we reconsidered the case on motion of the petitioner because of the decision in *Nation* v. *Esperdy*, 239 F. Supp. 531 (S.D. N.Y., 1965). We found that the petitioner and the beneficiary are regarded as persons having the status of stepchild and stepmother, respectively, under the rule laid down in *Nation* v. *Esperdy* and approved the visa petition for preference quota status on behalf of the beneficiary.

The facts in the case of *Nation* v. *Esperdy*, 239 F. Supp. 531, involved a beneficiary who was born out of wedlock in Jamaica on February 12, 1947 and who was abandoned in infancy by his natural mother. The plaintiff-stepmother commenced caring for the infant in 1949 and married the beneficiary's natural father in 1952 when the beneficiary was five years old. The plaintiff and her husband immigrated to the United States in 1957 or 1958. She became a naturalized citizen in 1962 and immediately thereafter petitioned for the beneficiary's admittance on a nonquota visa. The beneficiary was adopted by the plaintiff and her husband on July 17, 1963 when the beneficiary was 16 years old. Concededly, the adoption was without legal significance for immigration purposes because under section 101(b)(1)(E) a child must be adopted under the age of 14 years.

Judge Feinberg, after noting that the issue of whether "stepchild" excludes a father's illegitimate child but not a mother's, conceivably might be solved by looking to the statute alone, however turned to the legislative history in search of possible further enlightment. Although conceding, on balance, that Senate Report No. 1057 (85th Cong., 1st Sess., 1957) more clearly focused on the mother-child relationship and tended to support the Government's position, the court concluded that the respective reports, which it set out in full, were not conclusive but tended to suggest conflicting interpretations. The reports and the debates abounded with general indications that a principal purpose of the 1957 bill was elimination of administrative interpretations that have kept families apart. The court stated that it would be incorrect to characterize the legislative history as

452

compelling but that it did indicate that the contemporaneously enacted subsection (D) of section 101(b)(1) of the Act did not control the interpretation of subsection (B); considering the legislative history along with the obviously broad language of subsection (B) the court was persuaded on the facts of the case the beneficiary was the plaintiff's "stepchild." The court observed that there was no issue as to whether a true natural father-child relationship existed; that plaintiff, her husband and the beneficiary had concededly been a close family at the outset, and immediately after citizenship was secured, plaintiff petitioned to reunite the family unit; and concluded that whether the expressed congressional policy of keeping family units together should be overruled because of an unexpressed concern about fraud was doubtful, particularly where other sanctions of the law were available. The court, in deciding the case favorably to the plaintiff, overruled our basic decision to the contrary in *Matter of W—*, 7 I. & N. Dec. 685 (1958).

The instant case bears a remarkable similarity in its facts to those existing in the *Nation* case, *supra*. Here the beneficiary's natural father acknowledged her paternity shortly after birth and married the beneficiary when the petitioner was four years of age. Assuming the existence of a steprelationship upon the marriage of the petitioner's father to the beneficiary, that relationship continued after the stepchild reached the age of 21 and after she was married.[1] There was ample evidence of the existence of a bona fide family unit between the petitioner, the beneficiary and the natural father until the petitioner's immigration to the United States in 1953. It has been established that close family ties between the petitioner and the beneficiary exist until the present day.

The main thrust of the motion filed by the Service is an attack upon the decision in *Nation* v. *Esperdy*. The 1957 amendments to sections 101(b)(1)(B) and (D) of the Immigration and Nationality Act were passed simultaneously and the history of the amendment to subparagraph (B) shows quite clearly that Congress was looking only at situations in which alien women with illegitimate children had married United States citizens who are not the fathers of the children since these situations were the most numerous and formed the factual basis for the administrative decision in *Matter of W—*, 7 I. & N. Dec. 685 (1958). Apparently, Congress paid little attention to the precise factual situation involved in the *Nation* case. Judge Feinberg's view in the *Nation* case that subparagraph (D) does not restrict subparagraph (B) but merely applies to a different set of circumstances in which an illegitimate child may benefit,

---

[1] *Matter of C—*, 8 I. & N. Dec. 592; *Matter of G—*, 8 I. & N. Dec. 355.

evolves as a reasonably possible construction of the statute. As pointed out by Judge Feinberg, no clear intent can be gleaned from the legislative history to exclude a child born out of wedlock whose putative father's marriage created the step-relationship. In the absence of compelling evidence of such intent the court's literal application of the broad language of the remedial amendment is persuasive, particularly as applied to the facts present in that case, inasmuch as the decision involved highly sympathetic and equitable factors.

The same highly favorable and equitable factors are involved in the present case. We are unable to draw a distinction between the two cases. In view of the fact that no appeal was taken from the decision in the *Nation* case, and in view of the similarity of the basic facts and equities, we feel that the *Nation* case is binding upon the instant case. This conclusion will not foreclose further examination of the application of the *Nation* case to a different set of facts which are not clearly within the scope of that decision.

**ORDER:** It is ordered that the motion be and the same is hereby denied.