## MATTER OF MORRIS

In Visa Petition Proceedings

A-13855658
A-13855659

*Decided by Board April 5, 1966*

Beneficiaries, illegitimate children of the husband of the U.S. citizen peti-
tioner, are not stepchildren of the latter within the meaning of section
101(b)(1)(B), Immigration and Nationality Act, as amended, since a step-
relationship does not exist as the petitioner has seen the beneficiaries only
for very brief periods of time subsequent to her marriage to their natural
father and a family unit between the parties has never existed, beneficiaries
having been reared by their natural father's brother.

The cases come forward on appeal from the order of the District
Director, dated February 18, 1966, denying the visa petitions for
the reason that the facts presented disclose that the petitioner's
husband, the putative father, was never married to the respective
mothers of the beneficiaries and that the beneficiaries have not been
otherwise legitimated; it is concluded that the beneficiaries are not
children as defined in section 101(b)(1) of the Act.

The petitioner, a native-born citizen of the United States, 44 years
old, female, married Stanley Arthur Morris, a native of Jamaica
and a naturalized citizen of the United States on March 10, 1956
at St. Albans, New York. The beneficiaries are the illegitimate
children of the husband and it is claimed that by virtue of the
marriage, a steprelationship exists for immigration purposes be-
tween the petitioner and the beneficiaries. The beneficiaries are
natives and citizens of Jamaica, born January 22, 1954 and Sep-
tember 27, 1951.

A sworn statement was taken from the putative father, the hus-
band of the petitioner, on January 21, 1966. He testified that he
is the natural father of the beneficiaries who were born out of
wedlock from his relationship with two different women. They
bear the surname of the natural father but the name of the father
is omitted from their birth certificates. The affiant stated that the

537

beneficiaries have used his surname since birth and that he last saw the children in December 1963 when he visited Jamaica. Both children have been living in Jamaica with his brother, Ernest, since they were about three years and six months old, respectively. The affiant claims to have been supporting the children because both mothers abandoned them and that he has been in contact with his brother regarding their welfare (although he did not present any letters from his brother or money order receipts). The affiant further stated that his wife, the petitioner, has known about these children since they were married but that the only time the children stayed with them was for one or two nights at his mother's home in Jamaica when they visited there in 1960.

The petitioner has submitted an affidavit dated January 21, 1966 which stated that she married her husband on March 10, 1956 and that she has been aware of the existence of her husband's children since they were married. She states that she has met the children in December 1960 and again in September 1964 when she and her husband vacationed in Jamaica and on each occasion, the children spent one night with them at her mother-in-law's home and one night at her brother-in-law's home, where they reside permanently.

The visa petition relating to Leon Arthur Morris contains an affidavit by Ernest Morris, the uncle, executed October 12, 1964 which states that for the past eight years the said Leon Arthur Morris has been in his sole care and custody and has been permanently residing with him during that period; that from time to time he received financial assistance for Leon Arthur Morris from Stanley Morris; that the affiant is ready and willing to release him and relinquish all his rights and/or claim to the custody, care and maintenance of Leon Arthur Morris to Stanley Morris whenever requested by him so to do. The files also contained an indenture and release agreeing to the adoption of the beneficiaries by the petitioner and her husband, the natural father of the beneficiaries. These documents were executed before a Justice of the Peace in Westmoreland, Jamaica on September 18, 1963 and June 19, 1964 respectively.[1]

It is obvious at the outset that the natural father of these illegitimate children has no standing under section 101(b)(1) of the Immigration and Nationality Act to petition on behalf of these

---

[1] This indenture and release for adoption does not constitute a valid adoption under the Adoption of Children Law, 1956, which provides that the court having jurisdiction to make adoption orders shall be the Supreme Court of Judicature or any resident magistrates court and also makes provision for an Adoption Board to be present in court in cases of adoption.

beneficiaries. The petitioner's wife claims to qualify as a stepparent because of the provisions of subsection (B) of section 101 (b)(1) of the Immigration and Nationality Act which defines the term "child" to include a stepchild, whether or not born out of wedlock, provided the child has not reached the age of 18 years at the time the marriage creating the status of stepchild occurred. In *Matter of W—*, 7 I. & N. Dec. 685, we held that subsection (B) does not extend immigration benefits to the illegitimate child of the father who subsequently marries a citizen of the United States and whose wife thereafter seeks immigration benefits for the illegitimate children of her husband as her stepchildren.

The holding in *Matter of W—, supra,* was limited in the case of *Nation v. Esperdy,* 239 F. Supp. 53 (S.D.N.Y. 1965). The beneficiary in that case was born out of wedlock and was abandoned by his natural mother in infancy. Thereafter he was cared for by the petitioner who in 1952 married the natural father of the beneficiary when he was five years old. The beneficiary in that case lived with the natural father and his wife from infancy until the wife immigrated to the United States in 1957 and was followed by her husband a year later. The court, influenced by the broad language of subsection (B) of section 101(b)(1) of the Immigration and Nationality Act, and after examining the legislative history of the statute which tended to suggest conflicting interpretations, was persuaded that "on the facts of the case" the beneficiary was the plaintiff's "stepchild". The court pointed out that the plaintiff, her husband and the beneficiary had concededly been a close family at the outset, and immediately after her citizenship was secured in 1962, the plaintiff petitioned to reunite the family unit; futher, in 1963, the petitioner and her husband had legally adopted the beneficiary in Jamaica although this adoption was without legal significance from an immigration viewpoint since the beneficiary was then over 14 years of age.

The facts in the present case do not fall within the scope of the holding in the *Nation v. Esperdy, supra.* Here, prior to the marriage of the putative father and the petitioner in 1956 in the United States, there had been no family unit in existence in Jamaica between the parties. The beneficiaries were raised by their natural father's brother. The petitioner has seen the beneficiaries only for very brief periods of time subsequent to the marriage and there was never a family unit established between the petitioner, her husband, and his natural children, the beneficiaries. The documents of adoption, executed in 1963 and 1964 do not constitute a valid adoption under the law of Jamaica. There was never in existence a family

unit in Jamaica such as was present in the *Nation* case and which so strongly swayed the court's decision in that case because of the humanitarian and sympathetic factors present. It is concluded that the beneficiaries herein do not qualify as stepchildren within the meaning of subsection (B) of section 101(b)(1) of the Immigration and Nationality Act and that a steprelationship for immigration purposes does not exist in this case. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.