## MATTER OF HARRIS

### In Visa Petition Proceedings

### A–18953024

*Decided by Board November 6, 1970*

For the purpose of legitimation under section 101(b)(1)(C) of the Immigration and Nationality Act, as amended, the legal custody requirements of that section have not been met where beneficiary, a child born out of wedlock, has at all times resided with her natural mother in Liberia and has not at any time been in the care of or resided with the putative father (husband of the United States citizen petitioner), and the natural parents never married. Beneficiary does not qualify as a stepchild of the petitioner under section 101(b)(1)(B) of the Act within the meaning of *Nation v. Esperdy*, 239 F. Supp. 531 (S.D. N.Y., 1965), for failure of petitioner to establish the existence of a close family unit; neither does beneficiary qualify as a stepchild of the petitioner under section 101(b)(1)(B) of the Act under the rationale of *Andrade v. Esperdy*, 270 F. Supp. 516 (S.D. N.Y., 1967), that a preexisting *bona fide* family unit is not necessary to establish a stepchild relationship, since that rule is applicable only to cases arising within the jurisdiction of the Southern District of New York (*Matter of Soares*, 12 I. & N. Dec. 653 (1958), and *Matter of Amado and Monteiro*, 13 I. & N. Dec. 179 (1969)).

ON BEHALF OF PETITIONER:
John T. Vance, III, Rep.
8708 Garfield Street
Bethesda, Maryland 20014
Lois Mae Harris, Petitioner
(Brief filed)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

This is an appeal from the decision of the district director denying the visa petition filed by the petitioner on behalf of her alleged stepdaughter, Precious Hannah T. Harris. Petitioner seeks the issuance of an immigrant visa to the beneficiary as an immediate relative, as provided by section 201(b) of the Immigration and Nationality Act.

The petitioner, Lois Harris, is a 28-year-old married female, a native-born citizen of the United States. The beneficiary is a 5-year-old child, a native and citizen of Liberia, who resides with her natural mother, Henrietta Bull, in Liberia. The petitioner's husband, Mr. Moses P. Harris, Jr., is residing with the petitioner in the United States, and is now a lawful permanent resident. He declares himself to be the natural father of the child. He and the child's mother, Henrietta Bull, were never married.

Section 201(b) of the Immigration and Nationality Act defines "immediate relatives" as "children, spouses and parents of a citizen of the United States." Section 101(b)(1) defines the term "child" in five sepa-

rate paragraphs. Here we are concerned only with sections 101(b)(1)(*B*) and (*C*).[1]

Petitioner claims that Precious Hannah is her step-daughter; that the child was legitimated by the decree of a court in Liberia; and that the petitioner's marriage to Mr. Harris, Jr., created the stepchild relationship. The district director determined that this petition should not be granted either under (B) for a stepchild, or under (C) for a legitimated child.

The child was born on October 8, 1965. Mr. Harris, Jr., and Henrietta Bull never lived together as husband and wife. (See his sworn statement of November 14, 1969, page 2.) On September 8, 1966, Mr. Harris, Jr., left Liberia for the United States. He states, "Before my departure for the United States, I told my father that this child was mine and that I did not have the time to go to the courts to declare this." During the eleven months following the child's birth and before his departure from Liberia, Mr. Harris, Jr., did not participate in legitimation or adoption proceedings. On June 8, 1968, he married the petitioner in Montana. During July, 1969, the attempted legitimation proceedings were commenced and completed in Liberia. The record shows that on July 9, 1969, a court in Liberia entered a Decree of Legitimation concerning the beneficiary. On the same date the court also registered the child's birth; this had not been done previously.

### Is the beneficiary a "legitimated child" under section 101(b)(1)(C)?

The statute has three basic requirements: (1) that there be a legitimation; (2) that the legitimating parent or parents have *legal* custody at the time of such legitimation; and (3) that the legitimation take place before the child's eighteenth birthday. Legitimation without legal custody does not satisfy the statute. On the facts now before us, the majority of this Board finds that the petitioner and Mr. Harris, Jr., have not been successful in legitimating the child, nor have they established that they obtained legal custody.

The legitimation proceeding did not accomplish its purpose. The peti-

---

[1] Section 101(b)(1)—The term "child" means an unmarried person under twenty-one years of age who is—

\* \* \* \* \*

(B) a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred; or

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

tion was filed by the child's grandfather, Mr. Harris, Sr., and the decree declares the child's *grandfather*, Mr. Harris, Sr., to be the natural father of the child. Petitioner's husband, Mr. Harris, Jr., neither participated in nor was present at the legitimation proceeding. It is the petitioner's claim that the decree declaring the child's grandfather to be the natural father of the beneficiary is simply a clerical error. The decree was dated July 9, 1969. So far as this Board has been informed, the alleged error has not been corrected, although Mr. Harris, Sr., the child's grandfather, is said to be a lawyer in Liberia. We must presume that the court decree does what it says it does. On its face it declares Mr. Harris, Sr., to be the father. It is not for us to alter the effect of the decree.

Mr. Harris, Jr., was asked by the immigration examiner where and with whom Precious Hannah has lived since her birth. From his answers we learn that, first, "She lived *with her mother* until I left the country to come to the United States." Then, "three or four months" after he left Liberia, the *child and her mother* moved in with Mr. Harris, Sr., and lived in his residence for approximately four months. Thereafter, she (Precious Hannah) *lived with her mother* at the home of her mother's parents (maternal grandparents). Mr. Harris, Jr., alleges that his father contributes to the support of the beneficiary and that he, Mr. Harris, Jr., and petitioner, Lois, send gifts to the child. The record is devoid of any evidence in support of these allegations, such as cancelled checks, money order receipts, family snapshots and family letters, tending to demonstrate support, custody, and familial bonds.

The statutory provision that the child be ". . . . in the legal custody of the legitimating parent or parents at the time of such legitimation" is mandatory. It is not possible to find any period of time during which this child was in the care of Mr. Harris, Jr., or in his custody, either actual or legal. It is admitted that Mr. Harris, Jr., never lived with the child for the three-year period prior to the legitimation proceeding. The decree now offered purports to be a decree of legitimation, not a decree awarding custody. Possibly "legal custody" could have been given to Mr. Harris, Jr., by the court in Liberia, but it did not do so. We believe there was not even " substantial compliance" here.

We may ask what Congress meant by "legal custody." There are, of course, several kinds and degrees of custody. "Legal custody" implies either a natural right or a court decree. It is a settled principle of law that the mother of an illegitimate child has the primary right to its custody, and we cannot presume that she has lost custody. A mother may be deprived of the custody of her child but not without cause.[2]

---

[2] There are many guardianship and custody cases in all jurisdictions, often concerning illegitimate children. 51 A.L.R. 1507, particularly division III; 37 A.L.R. 2nd 882; *Jensen*

The minority opinion states that the beneficiary can be considered to have been in the custody of Harris, Jr., at the time of the legitimation proceeding, even though she may have been in the actual possession of her mother, and that "custody was in Harris, Jr., as much as it could be under these circumstances." A statement filed by Lois Harris, dated December 9, 1969, entitled "Brief for Petitioner—Appellant" declares (p. 2):

> . . . .(c) the child was in the legal custody of her legitimating "parent or parents" at the time of the legitimation. The child *was and is* in the legal custody of her legitimating parent, or natural mother, Henrietta Bull, who was at the court proceedings and gave her consent to such proceedings as is indicated by the "MOTHER'S AFFIDAVIT" which is found among the documents from Liberia. One legitimating parent in custody of the child seems to fulfill this part of the requirement.

This statement is based on the mistaken assumption that the natural mother was one of the "legitimating parents." It does, however, state the facts and corroborates our conclusion that Mr. Harris, Jr., did not have the required legal custody of the beneficiary. The natural mother here probably could become a "legitimating parent" only by marrying the natural father, in which case they would become the "legitimating parents." Neither Henrietta Bull nor Lois Harris can here be considered a "legitimating parent."

The minority opinion refers several times to the statutory history of the adoption and legitimation provisions and to the fact that these provisions were inserted to eliminate the frequent cases of fraudulent and *ad hoc* adoptions. This case does not differ from a great many others wherein we have denied petitions for illegitimate children of alien fathers because the requirements of our law had not been met.[3] There is no burden on the Immigration and Naturalization Service to establish that fraud is involved before these statutory requirements come into action. There has been no suggestion that any fraud exists here.

**Is the beneficiary a "stepchild" of petitioner under section 101(b)(1)(B)?**

The minority opinion herein states that Hannah Harris is not a stepchild under 101(b)(1)(B), and that she must qualify under 101(b)(1)(C) or not at all; that "child" is a defined term; that to be Mr. Harris, Jr.'s, legitimated child she must also meet the requirements of 101(b)(1)(C).

---

v. *Earley,* 63 Utah 604, 228 Pac. 217, noted 34 Yale L. Jour. 446; In re Bare's Guardianship, 170 Wis. 543, 174 N.W. 906; *Jendell* v. *Dupree,* 108 Kan. 460, 195 Pac. 861; *In re Navarro,* 77 Calif. 2d 500, 175 Pac. 2d 898, contains a discussion of custody and legitimation of an illegitimate child. In Montana, by statute the mother of an illegitimate minor child is entitled to its custody, service and earnings. 61 Rev. Code of Montana 108 (formerly section 5387). See *Haynes* v. *Fillner,* 106 Mont. 59, 75 Pac. 2d 802.

[3] Reported decisions represent only a small percentage of the cases decided by this Board.

Footnote No. 1 and the concluding paragraph of that opinion are designed to answer petitioner's argument that this is her stepchild. She relies on *Andrade v. Esperdy*, 270 F. Supp. 516 (S.D. N.Y., 1967), as authority for her position.

There have been a number of cases before both the courts and this Board on this specific question. The leading case is *Nation v. Esperdy*, 239 F. Supp. 531 (S.D. N.Y., 1965). The court stated that it was the intent of Congress in enacting section 101(b)(1)(B), which extended the definition of stepchild to include an illegitimate child, to keep families together. The court held that the father's illegitimate child could be considered a stepchild of the father's wife, because the child had always lived with them and was supported by them and was for all intents and purposes a member of the family. That case set forth the "close family unit" doctrine.

*Nation* was followed by *Matter of The*, 11 I. & N. Dec. 449 (BIA 1965), a case similar on its facts to the instant case, in which we followed the *Nation* doctrine and held that a step-relationship existed because the facts showed a long standing, close-family-unit relationship. In *Matter of Morris*, 11 I. & N. Dec. 537 (BIA 1966), we again applied the family unit doctrine, but the facts of that case were such that we determined that no step-relationship existed.

In *Andrade, supra*, the court held that an illegitimate child is a stepchild of the woman to whom the natural father is married, solely because of the existence of the marriage. The court denied the need to establish a preexisting *bona fide* family unit as a prerequisite, and stated that the legislative reports, although emphasizing the importance of preserving the family unit, did not intend section 101(b)(1)(B) to require a family unit as a prerequisite to classifying an illegitimate child as a stepchild. The court reviewed the Congressional reports which accompanied the enactment of this section of law and said that, although the reports speak of an intention to preserve the family unit, there is nothing to indicate that this was the sole purpose of the legislation.

In *Matter of Soares*, 12 I. & N. Dec. 653 (BIA 1968), the Board decided that the *Andrade* holding would not be extended beyond the jurisdiction of the court that rendered the decision (Southern District of New York). In *Matter of Amado and Monteiro*, 13 I. & N. Dec. 179 (BIA 1969), the Board again held that the *Andrade* rule is not binding in cases arising outside the Southern District of New York. The family unit rule was followed in reaching the decision, and the appeal was dismissed.

We conclude that the beneficiary in this case cannot be considered the legitimated child of Mr. Harris, Jr. "Constructive custody" of the child cannot be manufactured from the facts of this record. Mr. Harris, Jr., has never had custody of Hannah, legal or physical. We cannot find her

to be petitioner's stepchild; she never lived with petitioner and Mr. Harris, Jr., so she cannot benefit from the family unit rationale. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

**Maurice A. Roberts, Chairman, Dissenting:**

I have signed the foregoing order dismissing the appeal, since it represents the will of the majority of this Board. In my opinion, the appeal should be sustained and the visa petition should be granted.

The petitioner, a citizen of the United States, seeks to confer immediate relative status under section 201(b) of the Immigration and Nationality Act upon the beneficiary as her stepchild. The beneficiary was born out of wedlock in Liberia on October 8, 1965 to petitioner's husband, Moses Poka Harris, Jr. (hereafter referred to as Harris Jr.) and Henrietta Bull, both then single. Harris Jr. came to the United States in September 1966 as a student on a Liberian Government scholarship and has remained here since , having had his status adjusted to that of a permanent resident following his marriage to petitioner on June 8, 1968.

Before leaving Liberia for the United States, Harris Jr. acknowledged to his father (hereafter, Harris Sr.) that the beneficiary was his child. He asked Harris Sr. to institute proceedings in his behalf in the Liberian court to have Harris Jr. named as legal father of the child. Harris Jr. confirmed this request in writing after he arrived in the United States.

Although he never lived with the beneficiary's mother, Harris Jr. took care of the child while he was in Liberia and before he obtained his scholarship. A few months after he left for this country, the child and her mother moved in with Harris Jr.'s parents. After a while, the child and her mother moved in with the latter's mother. Harris Sr. contributes to the support of the child and Harris Jr. sends occasional gifts.

On July 9, 1969, Harris Sr. filed a verified petition in the Liberian court, supported by the affidavit of Henrietta Bull, seeking a decree legitimatizing the beneficiary as the child of Harris Jr. and Henrietta Bull. The court's "Decree of Legitimation", in what is obviously a clerical error, refers to Harris Sr.'s petition as reciting that he is the natural father of the child. On the basis of this decree, petitioner claims to be the beneficiary's stepmother by virtue of her marriage to Harris Jr.

The majority opinion finds the beneficiary unqualified on this record on two distinct grounds, based on the following legal conclusions: (1) The legitimation decree declares her to be the child of Harris Sr. rather than Harris Jr. (2) She was not in the legal custody of Harris Jr. at the

time of legitimation. In my view, a realistic appraisal of the record requires rejection of both conclusions.

The Liberian adoption decree should, in my estimation, be accepted as what it was designed to be, an adjudication that the beneficiary is the legitimate child of Harris Jr. Certainly, this is what the court proceedings were designed to accomplish. The adoption petition itself, filed by Harris Sr., makes it clear that he is the father of Harris Jr. and is acting in the latter's behalf and at his request because Harris Jr. is in the United States. Such "next friend" actions are not unknown in the law. The adoption petition and the supporting affidavit of Henrietta Bull state unequivocally that Harris Jr. is the natural father of the child. The adoption petition prays for a decree "legitimizing the said minor child, Precious Hannah Harris born out of wedlock, so that she might share equally in petitioner's son's property. . . in common with other children of my son Moses P. Harris Jr. now or hereafter to be born." The caption of the decree itself refers to the petition of Harris Sr. "FOR THE LEGITIMATION OF HIS MINOR GRANDDAUGHTER."

The decree nowhere categorically declares Harris Sr. to be the child's father. In its preamble, it erroneously paraphrases Harris Sr.'s petition as stating that "he is the natural father" of the child. The operative order merely grants the petition of Harris Sr. and declares that the child shall thenceforth be known as Precious Hannah Harris. Certainly, this order is clearly compatible with the notion that the beneficiary was considered to be the child of Harris Jr. What was obviously contemplated by all concerned was a decree declaring the beneficiary to be the legitimate child of Harris Jr., not of Harris Sr. Under these circumstances, it seems to me that, in the light of the unambiguous recitals in the underlying petition and supporting affidavit, we must read the "he" in the phrase just quoted as referring to Harris Jr. rather than Harris Sr.

Apart from this one ambiguity flowing from the manifestly incorrect recital in the decree's preamble, there is nothing whatsoever in the record to support the conclusion, stated in the majority opinion, that "The legitimation proceeding did not accomplish its purpose" and that the decree "declares Mr. Harris, Sr., to be the father" (p. 3). In my view, the decree should be accepted as sufficient to establish the beneficiary's legitimation as the child of Harris Jr.

Even if the decree be accepted as sufficient to establish legitimation, however, petitioner still must prove that the beneficiary was in the "legal custody" of Harris Jr. at the time of the decree, as required by section 101(b)(1)(C) of the Act [1]. The majority opinion holds that such legal custody in Harris Jr. has not been shown. I disagree.

---

[1] On the surface, if the legitimation decree could be accepted without more as establish-

The provision relating to legitimated children finds its origin in the Immigration and Nationality Act of 1952. The prior statute, while conferring nonquota status on the minor, unmarried children of United States citizens,[2] did not define the term "child" except to exclude relationships by adoption.[3] I have found nothing in the legislative history of the 1952 Act provision which expressly discusses the "legal custody" requirement or indicates why Congress enacted it. It seems clear, however, from the general discussion of the suggested changes that Congress was concerned with possible loopholes for fraud. Experience through the years had shown that many frauds had been perpetrated by United States citizens seeking to bring imposters to this country as their children. See Senate Report No. 1515, 81st Congress, 2d Session, pp. 468–469. Insofar as concerns legitimated children, it is fairly inferable that the purpose of the "legal custody" requirement was to prevent abuse through *ad hoc* legitimation by a putative father who had had little or no contact with the child and who had obtained the legitimation solely for the purpose of circumventing the immigration laws.

If the statute required "actual custody" or "physical custody" or even mere "custody", there could be no doubt that Harris Jr. could not meet these conditions, for it is clear that he was physically far removed from the beneficiary at the time of the legitimation and had been for almost three years. The term "legal custody", however, is much broader and encompasses relationships which can be constructive as distinquished from actual. If a small child were away at boarding school when its parents married and thereby rendered it legitimate, there can be no doubt that the child would be considered constructively in the legal custody of the parents, even though actually it was in the custody of the school.

On the record in this case, it seems to me that the beneficiary can be considered as having been in the legal custody of Harris Jr. at the time of the legitimation, even though she may have been in the actual possession of her mother. Although he never lived with the child's mother, Harris Jr. supported the child while he was still in Liberia. Before he left for this country as a student, he acknowledged to Harris Sr. that he

---

ing that the beneficiary is Harris Jr.'s child, all the requirements of section 101(b)(1)(B) of the Act would seem to be met, since petitioner's marriage to Harris Jr. obviously occurred before the beneficiary reached her eighteenth birthday. The term "child", however, is a defined term. If the beneficiary is to be regarded as Harris Jr.'s legitimated child, for immigration purposes she must also meet the requirements of section 101(b)(1)(C), including its "legal custody" provision. If the beneficiary is considered Harris Jr.'s illegitimate child, a different set of principles comes into play and petitioner must show the existence of a close family unit among all three before she can be recognized as the child's stepmother within the meaning of section 101(b)(1)(B).

[2] Section 4(a), Immigration Act of 1924, 8 U.S.C. 204(a) (1946 ed.)

[3] Section 28(m), Immigration Act of 1924, 8 U.S.C. 224(1) (1946 ed.)

was the child's father and he asked Harris Sr. to file legitimation proceedings in his behalf in the Liberian court, later confirming this request in writing from the United States. The child and her mother lived for a time in the home of Harris Jr.'s parents and after they moved out Harris Sr. continued to support the child. By that time, Harris Jr. on his limited income as a student was unable to make substantial contributions. Petitioner informs us in her brief on appeal that Harris Jr. acted at the direction of his father, an attorney, in stopping regular payments and relying on the latter to support the beneficiary, in keeping with the African custom which requires able parents to care for their children and dependents until their children complete school.

There is no showing that Harris Jr. was remiss in any legal obligation to his child. His failure to be present in court for the legitimation is understandable in view of the distance and expense involved. Harris Sr. acted in his son's behalf, not only in obtaining the legitimation decree but also in supporting the beneficiary. It seems to me that custody was in Harris Jr. as much as it could be under these circumstances, and that he should be considered as having constructive custody of the beneficiary at the time of the legitimation.

In *Matter of W—*, 7 I. & N. Dec. 373 (BIA 1956), where consent on the part of the natural mother to legitimation by the putative father was *assumed* by this Board, we held that by such consent the natural mother agreed to transfer of custody to the father. In the case now before us, the natural mother of the child *expressly* consented to the legitimation by Harris Jr.

This case is distinguishable from *Matter of Amado and Monteiro*, 13 I. & N. Dec. 179 (BIA 1969), and the numerous cases which preceded it, in which we required a showing of a close family relationship before we would recognize a petitioner as the stepmother of her husband's *illegitimate* child. The beneficiary in this case has been duly legitimated. On this record, there is no reason to suspect the type of fraud which motivated Congress to impose the "legal custody" requirement.

I would sustain the appeal.

Board Member Louisa Wilson has authorized me to state that she joins in this dissenting opinion.