## MATTER OF YOUNG*

### In Visa Petition Proceedings

#### A-12788962

*Decided by Board July 28, 1967*

Since the relationship of stepmother-stepchild within the ambit of *Nation* v. *Esperdy*, 239 F. Supp. 531, is created upon the marriage of the father of the illegitimate child to the stepmother subsequent to the birth of the child, the relationship of stepmother-stepchild does not exist for immigration purposes between petitioner, a lawful permanent resident, and beneficiary, the illegitimate child of her prior husband, which child was born as the result of an extramarital relationship during the existence of their marriage.

ON BEHALF OF THE PETITIONER:
Jack Wasserman, Esquire
902 Warner Building
Washington, D.C. 20004

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

The case comes forward on appeal from the order of the District Director, New York District, dated May 8, 1967 denying the visa petition for the reason that the beneficiary, the alleged stepdaughter, is not a "child" as defined in section 101(b)(1)(B) or (D) of the Immigration and Nationality Act in that she is not a legitimate child, since petitioner's husband was never married to her mother or otherwise legitimated her in accordance with the terms of section 101(b)(1)(C) of the Act; furthermore, the case is distinguishable from the decision in *Nation* v. *Esperdy*, 239 F. Supp. 531 (1965).

The petitioner, a 52-year-old female, a native of Hong Kong, B.C.C., a British subject, and a lawful permanent resident of the United States since January 21, 1962, seeks preference quota status on behalf of the beneficiary as her stepchild. The beneficiary is a native of Hong Kong, B.C.C., a British subject, 10 years old. The visa petition indicates that the petitioner was married on November 15, 1935 at Nan Chung Village, N.T., Hong Kong. A birth certificate of the beneficiary shows that her birth was registered under the name of Tsui Ling,

*See also *Matter of Young*, Int. Dec. No. 1819, of which the alien beneficiary in this case is also the subject.

her father being listed as Young Wan Tung and her mother being described as Yau Koon Tai.

Sworn statements were taken from the petitioner and her husband, Young Wan Tung, by an immigration officer on April 13, 1967. When questioned regarding the birth certificate of the beneficiary, she stated that the midwife advised her to use the name of herself and her husband as parents instead of the name of the natural mother of the child, who was a servant in her household. The petitioner stated that the servant had told her that her husband was the father of this child. She stated that the child was born and remained in her household where the natural mother of the child continued to be employed as a servant, that she bottle fed the baby and that the child's natural mother took care of the child but not enough. The petitioner stated that at the time the child was born, her husband was in the United States, that she informed him of the birth of the child and that he sent money for the support of the child but that she had no receipts. The petitioner left Hong Kong for the United States in 1962 when the beneficiary was about five years old. The beneficiary continued to reside in the petitioner's house with her natural mother, the petitioner's daughter-in-law and her grandchildren, and was cared for by her natural mother. The petitioner's husband continued to send financial support for the child as well as for the daughter-in-law and the grandchildren.

The sworn statement of the petitioner's husband confirms that they were married in 1935, that he left for the United States in 1937 and that he visited his wife in Hong Kong in 1945 when he was a member of the United States Army, visited her again in 1946 and 1949 and last visited her from February 1956 until December 1956. He admitted that he engaged in sexual relations with the servant girl during all his visits to Hong Kong and that they engaged in relations about 10 or 15 times. He admitted, however, that he had told an investigator in connection with an attempt to bring in the beneficiary as an orphan that he had intercourse with the servant girl only once. However, he now states it may have been more than once but he did not exactly remember and that the servant girl is now about 43 years old. The husband stated that the only way he has of knowing that he is the child's father is that the servant girl told his wife that he was the father and that he knows he had engaged in sexual intercourse with her; that in 1956 when he left Hong Kong she appeared to be pregnant; that he discussed this with her and she told him that she was pregnant and it was his child. He believed her because of the circumstances involved and said that he is willing to undergo blood tests to determine compatibility. He stated that he supported the child but that he has

never seen the child. The husband did not consider the servant girl, Tong Kai, to be a concubine and declared that the beneficiary was his illegitimate child.

Counsel places reliance upon the case of *Nation* v. *Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965), to support his contention that the beneficiary is the stepchild of the female petitioner. The *Nation* case involved a child who was born out of wedlock on February 12, 1947, was abandoned in infancy by his natural mother, he was cared for by the plaintiff since 1949. The plaintiff married the beneficiary's natural father in 1952 when the beneficiary was five years old. The court found that the legislative history of the Act of 1957, which amended section 101(b)(1) of the Immigration and Nationality Act so as to include in subparagraph (B) a stepchild, *whether or not born out of wedlock*, provided the child had not reached the age of 18 years at the time the marriage creating the status of stepchild occurred, while tending to sustain the Government's position that it applied only to the illegitimate child of a mother who subsequently married a United States citizen, nevertheless was not sufficiently compelling to control the interpretation of subparagraph (B). The court observed that the plaintiff, her husband and the beneficiary had been a *close family unit* since shortly after the beneficiary's birth, that immediately after citizenship was secured, the plaintiff petitioned to unite the family unit. The court applied the "plain meaning" rule to the phrase "whether or not born out of wedlock" in view of the clearly expressed legislative intention to keep together the family unit whenever possible and held that *on the facts of the case*, in view of the existence of a family unit, the beneficiary was the plaintiff's stepchild.

There are important differences between the present case and the *Nation* case. In the *Nation* case, the factual situation was that the child was born out of wedlock, and the natural father married the step-mother when the child was five years old. The court at pages 533–534 stated that although accepted dictionaries define stepchild as a child by a former marriage, this statute literally contemplates that for immigration purposes, a person may be a stepchild even though he is illegitimate and that neither the accepted dictionary definitions nor the statute makes any distinction between father and mother in defining a stepchild. These words of the court must be taken in the factual context in which they were uttered, a case where the step-relationship occurred upon the *subsequent* marriage of the father of the illegitimate child to the stepmother, thus creating the step-relationship by such subsequent marriage.

In the instant case, there is no subsequent marriage, the petitioner being the wife of the husband, the child being the illegitimate child of

th petitioner's husband, born as a result of illicit intercourse occurring during the marriage. Upon these facts, it is difficult to perceive how the petitioner qualifies as a stepmother merely by virtue of the fact that the beneficiary and her natural mother continued to reside in the household where the natural mother was a servant.[1]

In addition, the petitioner's husband has never even seen the child. It is obvious that there was not in existence a family unit which was such a strong factor in influencing the decision in *Nation* v. *Esperdy*, 239 F. Supp. 531. Assuming the petitioner's husband was the father of the child, in addition to the father never having seen the child, the child was raised by the natural mother who resided in the petitioner's household, the petitioner assisting merely in occasionally bottlefeeding the child.

The present case cannot be compared with the situation in *Nation* v. *Esperdy* or in *Matter of The*, Int. Dec. No. 1541, which was considered a situation analogous to the *Nation* case. The circumstances of the case fall within the principle of the holdings in *Matter of Aleo*, Int. Dec. No. 1542; *Matter of Morris*, Int. Dec. No. 1568; *Matter of Green*, Int. Dec. No. 1570; and *Matter of Sobers*, Int. Dec. No. 1590. These latter cases apply even more strongly because it does not appear under the factual situation presented herein that there is any claim to a stepmother-stepchild relationship based upon an illegitimate child born to the petitioner's husband during the existence of the marriage of the petitioner and her husband.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

---

[1] Cf., *Matter of Green*, Int. Dec. No. 1570 (October 29, 1965).