## MATTER OF STULTZ

### In Visa Petition Proceedings

#### A-20099775

*Decided by Board November 20, 1974 and March 18, 1975*
*Decided by Attorney General June 30, 1975*

The petitioner, a naturalized United States citizen is married to the beneficiary's father; the beneficiary was born over 3 years after this marriage as the result of an illicit relationship between the married natural father and a woman to whom he was never married. The petitioner alleges that her husband, the beneficiary's father, has supported the child since it was abandoned by its mother; that the petitioner took care of the child about 2 years in Jamaica; and that the petitioner and her husband adopted the child in Jamaica, when the child was 14 years and nine months old. The district director denied the visa petition filed under section 201(b) of the Immigration and Nationality Act. The Board sustained petitioner's appeal finding a stepchild relationship arose even though the illegitimate child was born after the present marriage, based on the evidence that there is an existing *bona fide* family unit. It held that adulterine children, irrespective of the time of their birth, should be treated like other illegitimate children under section 101(b)(1)(B) of the Act. On an application to reconsider by the Service, the prior decision was affirmed. The Attorney General, on review, affirms the grant of the petition; regardless of whether the illegitimate child was born before or after the present marriage, the granting of the petition is consistent with the legislative history and policy of section 101(b)(1)(B) of the Act, where, as in this case, the spouse of the natural parent desires to raise that child and to maintain the family unit as evidence by support, adoption, etc. [*Matter of Young*, 12 I. & N. Dec. 340, 544 (BIA 1967) and *Matter of Green*, 11 I. & N. Dec. 546 (BIA 1965) were overruled by the Board insofar as they are inconsistent with this opinion.]

ON BEHALF OF PETITIONER:
David Scheinfeld, Esquire
41 East 42nd Street
New York, New York 10017

ON BEHALF OF SERVICE:
Irving A. Appleman
Chief Trial Attorney

Sam Bernsen
General Counsel

### BEFORE THE BOARD
(November 20, 1974)

The United States citizen petitioner applied for immediate relative status for the beneficiary as her child under section 201(b) of the Immigration and Nationality Act. In a decision dated March 1, 1974 the

district director denied the petition. The petitioner has appealed from that decision. The appeal will be sustained.

The petitioner was married on January 1, 1955 in Jamaica. On June 19, 1958 the beneficiary was born in Jamaica to the petitioner's husband and a woman other than the petitioner. An affidavit signed by the petitioner and her husband, the beneficiary's father, contains the following additional averments: The beneficiary lived with her natural mother until August 1960, a little over two years after her birth, when her natural mother abandoned her. Her father has supported her since that time. The beneficiary's father came to the United States in December 1960. Until the petitioner herself came to the United States in 1962, she took care of the beneficiary in Jamaica. The petitioner and her husband have made frequent trips to Jamaica and have visited the beneficiary each time. The petitioner became a United States citizen in 1968. She and her husband, also a naturalized United States citizen, have sent approximately $100 per month to the couple with whom the beneficiary has been staying, for her clothing, tuition, and maintenance.

The record contains a copy of an adoption order from the Supreme Resident Magistrate's Court of Halfway-Tree, St. Andrew, Jamaica, showing that the petitioner and her husband legally adopted the beneficiary on March 28, 1973, when the beneficiary was 14 years and nine months old.

The petitioner believes that the beneficiary qualifies as her stepchild [1], and hence as her child, under section 101(b)(1) of the Act. This is the question that must be resolved. In his denial of the petition the district director stated that because the beneficiary was illegitimate, she could not qualify as the petitioner's child.

In section 101(b)(1)(B) of the Act a "child" is defined as an unmarried person under the age of 21 who is:

> (B) a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred. . . .

Several significant cases have helped to clarify the definition of a "stepchild." In *Nation v. Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965), the court noted that despite common dictionary definitions of a stepchild as a child by a former marriage, the language of section 101(b)(1)(B) contemplates that an illegitimate child may also be considered a stepchild for immigration purposes. Id. at 533. In the *Nation* case, the beneficiary had been abandoned in infancy by his natural mother. The petitioner began caring for the beneficiary when he was two years old,

---

[1] Although the beneficiary was legally adopted, the petitioner is not seeking her admission as an adopted child because the beneficiary was not under the age of 14 when she was adopted, and is therefore not a "child" for immigration purposes under section 101-(b)(1)(E), the subsection governing adopted children.

and she married his natural father three years later, in 1952. They all lived together until the petitioner immigrated to the United States in 1957. Her husband followed in 1958. The petitioner and her husband adopted the beneficiary when he was 16. As soon as the petitioner obtained United States citizenship, she sought to reunite the family by petitioning for non-quota status for the beneficiary. The court held that the child was the petitioner's stepchild within the meaning of section 101(b)(1)(B) and was eligible for nonquota status.

We followed *Nation* in *Matter of The*, 11 I. & N. Dec. 449 (BIA 1965). In that case the petitioner was the stepchild, who had been born out of wedlock, and the beneficiary was her stepmother. We found that there was ample evidence of a *bona fide* family unit including the petitioner, the beneficiary, and the natural father, which continued until after the petitioner reached the age of 21 and was married. She immigrated to the United States in 1953, and ten years later filed a petition on behalf of her stepmother. Unable to distinguish *The* from the *Nation* case, we approved the visa petition.

The one factor which distinguishes the present case from *Nation* and *The* is that the marriage of the petitioner and the beneficiary's father took place before rather than after the birth of the beneficiary. In *Matter of Green*, 11 I. & N. Dec. 546 (BIA 1965), and *Matter of Young*, 12 I. & N. Dec. 340 (BIA 1967), cases involving children born of adulterous relationships, we followed *Nation* and dismissed the appeals on two grounds: (1) the marriage creating the asserted steprelationship had not taken place *subsequent* to the birth of the beneficiary, and (2) there was no preexisting family unit.

The petitioner in *Young* made a motion for reconsideration by this Board on the basis of an intervening decision, *Andrade v. Esperdy*.[2] In that case the court held that the petitioner's husband's illegitimate daughter was classifiable as a stepchild under the immigration law, despite the fact that there was no preexisting family unit including the petitioner, the beneficiary, and the beneficiary's father.[3] In denying the motion we stated that adulterine children are the issue of adulterous intercourse and are regarded more unfavorably than the illegitimate offspring of single persons. We went on to say that ". . . it is difficult to understand the argument that the beneficiary in this case can be regarded as a stepchild. The beneficiary is simply an illegitimate adulterine child. The child was born during a then existing marriage as the result of illicit intercourse between the married natural father and a

[2] 270 F. Supp. 516 (S.D.N.Y. 1967).

[3] In *Matter of Soares*, 12 I. & N. Dec. 653 (D.D. 1967; BIA 1968), we refused to apply the holding of *Andrade* beyond the Second Circuit, and in *Matter of Amado and Monteiro*, 13 I. & N. Dec. 179 (BIA 1969), we further limited the application of *Andrade* to the Southern District of New York, where that case arose.

female servant and there never has been a subsequent marriage by the natural parents of the child so as to create a steprelationship." *Matter of Young*, 12 I. & N. Dec. 544, 545 (BIA 1967). We declined to discuss the holding in *Andrade*, and based our decision to dismiss the appeal on the ground that there was no steprelationship because the marriage which would have created such a relationship had not taken place *after* the birth of the beneficiary. We now recede from that position.

Section 101(b)(1)(B), which defines "stepchild," does not in terms require that the marriage take place *after* the child is born.[4] All it requires is that the marriage have taken place before the child's 18th birthday. The intent of Congress was obviously to preclude recognition of an adult as a stepchild where the marriage creating the relationship took place after the child reached age 18. Recognizing this beneficiary is in keeping with, and does no violence to, that intent. Here the beneficiary had not reached the age of 18 when the marriage between the petitioner and the beneficiary's father occurred; she had not even been born then. Moreover, a close family unit, including the beneficiary, her father, and the petitioner, appears to have existed from August 1960, when the beneficiary's mother abandoned her, until December 1960, when her father departed for the United States. The petitioner continued to care for the beneficiary for two more years, until the petitioner's own departure for the United States. In addition, the petitioner and the beneficiary's father maintained their relationship with the beneficiary through frequent visits and regular financial support.

We hold that the petitioner has established the existence of a steprelationship between herself and the beneficiary, since the marriage between the petitioner and the beneficiary's father, which created the status of stepchild, occurred before the beneficiary reached the age of 18. We further hold that adulterine children should be treated like other illegitimate children.

We overrule our holding in *Matter of Young*, 12 I. & N. Dec. 544 (BIA 1967), *Matter of Young*, 12 I. & N. Dec. 340 (BIA 1967), and *Matter of Green*, 11 I. & N. Dec. 546 (BIA 1965), insofar as they are inconsistent with this opinion.

ORDER: The appeal is sustained and the petition is approved, classifying the beneficiary as the child of the petitioner.

BEFORE THE BOARD
(MARCH 18, 1975)

The Immigration and Naturalization Service has moved that we reconsider our decision of November 20, 1974, in which we held that the

---

[4] That the definition of "stepchild" deviates from the generally accepted definition is recognized in *Nation* v. *Esperdy*, supra at 533.

beneficiary is the stepchild of the petitioner, although she was born out of wedlock after the marriage of the petitioner and her husband, to the petitioner's husband and another woman. The motion will be denied.

Having carefully considered the arguments of the Service in support of its motion to reconsider, as well as those of counsel for the petitioner in his brief in opposition to the Service motion, we see no reason to alter our decision.

**ORDER:** The motion is denied.

David L. Milhollan, Chairman, and Irving A. Appleman, Board Member, abstained from consideration of this case.

Louis P. Maniatis, Board Member, dissents without opinion.

**BEFORE THE ATTORNEY GENERAL**
(June 30, 1975)

Petitioner, Ida May Stultz, a United States citizen, has applied for immediate relative status for the beneficiary, Susan Stultz, as her child under section 201(b) of the Immigration and Nationality Act (hereinafter referred to as the Act), 8 U.S.C. §1151(b). In a decision dated March 1, 1974, the district director denied the petition. On appeal to the Board of Immigration Appeals the district director's decision was reversed. In accordance with the request of the Commissioner of the Immigration and Naturalization Service (Service), this matter has been referred for my review pursuant to 8 CFR §3.1(h)(1)(iii). The question involves the proper interpretation of the term "stepchild" as used in §101(b)(1)(B) of the Act, 8 U.S.C. §1101(b)(1)(B).

The facts are as follows:

The petitioner was married on January 1, 1955, in Jamaica. On June 19, 1958, the beneficiary was born in Jamaica to the petitioner's husband and a woman other than the petitioner.[1] An affidavit executed by the petitioner and her husband states that the beneficiary lived with her natural mother until August 1960, a little over two years after her birth, when her natural mother abandoned her, and that the beneficiary has since been supported by her natural father, petitioner's husband. Petitioner's husband came to the United States in December 1960. Following his departure, the petitioner cared for the child until she herself came to the United States in 1962. The affidavit further declares that the petitioner and her husband have made trips to Jamaica and have visited the beneficiary each time, and that they have sent approximately

---

[1] While the Immigration and Naturalization Service argued before the Board that there was insufficient evidence to establish the existence of any relationship between petitioner's husband and the beneficiary, that issue is not raised here. See *Request for Certification to Attorney General* of the Immigration and Naturalization Service, filed April 15, 1975.

366

$100 a month to the couple with whom the beneficiary has been staying, for her clothing, tuition and maintenance. Petitioner was naturalized as a United States citizen in 1968. Her husband is also a naturalized United States citizen.

The record contains a copy of an adoption order issued by the Supreme Resident Magistrate's Court of Halfway-Tree, St. Andrew, Jamaica, showing that the petitioner and her husband legally adopted the beneficiary on March 28, 1973, when the beneficiary was 14 years and 9 months of age. Although the beneficiary was legally adopted, the petitioner is not seeking her admission as an adopted child because the beneficiary was not under the age of 14 when she was adopted and is therefore not a "child" for immigration purposes under §101(b)(1)(E) of the Act, the subsection governing adopted children.

If the beneficiary is petitioner's "child" she is eligible for immediate relative status. "Child" is defined in §101(b)(1) of the Act to include:

(1) . . . an unmarried person under twenty-one years of age who is—

\* \* \*

(B) a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred. . . .[2]

The question here is a narrow one: Whether the illegitimate child of one spouse becomes the stepchild, as the term is used in the Act, of the other spouse when the child is conceived and born *during* the existence of the marriage. It is clear that an illegitimate child of one spouse becomes the stepchild of the other spouse when the child is conceived *prior* to that marriage. See *Nation* v. *Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965); *Andrade* v. *Esperdy*, 270 F. Supp. 516 (S.D.N.Y. 1967).[3]

The Service argues that the Board's inclusion of *illegitimate children conceived during the existing marriage* within the term "stepchild" does violence to the commonly accepted definition of that word as a relationship of a legitimate child created through the remarriage of a parent. See, *e.g.*, Merriam-Webster New International Dictionary 2237 (3d ed. 1961). While apparently conceding that Congress departed from this strict definition through the explicit inclusion of an illegitimate child conceived and born prior to an existing marriage, the Service argues that Congress did not intend to include children who are adulterine with respect to the existing marriage.

---

[2] The phrase "whether or not born out of wedlock" in subsection (B) was added in the 1957 amendments to the Act. Pub. L. No. 85-316, 71 Stat. 639.

[3] This would be so whether or not conception resulted from an adulterous relationship. The language of subsection (B) makes no distinction between adulterine children "born out of wedlock," and other children "born out of wedlock." Nor does the legislative history contain any hint of such a distinction.

367

Initially, the Service asserts that use of the language ". . .provided the child had not reached the age of eighteen at the time the marriage creating the status of stepchild occurred. . ." in subparagraph (B) presupposes the birth of the child prior to that marriage. It further argues that, starting from a definition of stepchild as (1) legitimate and (2) born prior to the existing marriage, Congress, in explicitly removing only the first qualification, left the second intact.

While the Service's arguments are plausible, the language of subsection 101(b)(1)(B) does not lead inevitibly to this result. The quoted language seems intended only to insure that the relationship (through the natural parent) between the petitioner and the child sought to be admitted as an immediate relative existed in the child's formative years, when the emotional bonds of a parent-child relationship are primarily formed. The provision deals with birth prior to the existing marriage simply because only that situation presents the disqualifying factor of concern to the Congress. Nor is the normal definition of the word "stepchild" controlling when, as here, the "step" prefix of that term has been expressly modified by Congress in such a fashion that the prefix can as easily be read to denote only a relationship dependent solely upon marriage to a natural parent as to establish some intermediate category requiring marriage subsequent to the child's birth.

Ultimately, however, the issue must turn not on refined semantic analysis, but on a realistic assessment of the intent of Congress. The legislative history does not speak directly to the point.[4] What does emerge, however, from the legislative history of the amendments adding the phrase "whether or not born out of wedlock" is a distinct sense that any doubt in interpretation is to be resolved in favor of recognition of a "stepchild" relationship.

> In view of the clearly expressed legislative intention [regarding the Immigration and Nationality Act] to keep together the family unit wherever possible, it would appear to be a desirable result, based upon legal and equitable considerations, to adopt a liberal construction. No harm could possibly result from such a construction, and the consequences would fulfill the humane considerations involved in keeping intact the family unit.

House Report, 1957 Congressional & Administrative News at 2021.

---

[4] While the legislative history does in some places allude to children "born out of wedlock prior to the marriage of [their] mother to a United States citizen," see, e.g., H.R. Rept. No. 1199, 85th Cong., 1st Sess. (1957) (hereinafter referred to as the House Report), U.S. Code Congressional & Administrative News, 2016, 2020; 103 Cong. Rec. 16301 (Remarks of Representative Celler), these references are to the facts involved in the "particular obnoxious administrative action" which highlighted the need for Congressional action. See Andrade v. Esperdy, supra, 270 F. Supp. at 519. For the reasons set out below, as well as those set out in Nation v. Esperdy, supra and Andrade v. Esperdy, supra, it is my view that the amendments passed by Congress in 1957 were limited solely to the facts of the specific case which prompted their consideration.

In the same report, the House Committee on the Judiciary stated:

Sympathetic and humane considerations dictate an interpretation which would not separate the child, whether legitimate or illegitimate, from its alien parent, particularly in those cases where the citizen parent has executed a petition for the issuance of a nonquota visa to such child and has evidenced an intent to regard the illegitimate stepchild of his spouse as part of his own family and to raise that child as a part of the family unit.

*Id.* Granting of the petition in the present case would be far more consistent with this policy than a denial based on the Service's narrow reading. There is no indication that Congress anticipated the specific distinction urged by the Service. Nor, when the spouse of the natural parent desires to raise the child as part of the family unit, is the value of such a distinction apparent.

Finally, it appears that if petitioner and her husband were to obtain a divorce and then remarry, the sole obstacle to the child's admission under the Service's theory would be eliminated. And yet there would have been no change in the nature of the child's birth, the emotional relationship within the family, or any other factor of conceivable relevance to the immigration laws. It is difficult to impute to Congress the establishment of such a scheme in an act designed to "provide for a fair and humanitarian adjudication of immigration cases." *Id.* at 2020.

For the reasons stated above, it is my view that adulterine children, irrespective of the time of their birth, should be treated like other illegitimate children under section 101(b)(1)(B) of the Immigration and Nationality Act. The order of the Board of Immigration Appeals approving the petition and classifying the beneficiary as the child of the petitioner is affirmed.