## MATTER OF FONG

### In Visa Petition Proceedings

#### A-21324649

*Decided by Board January 7, 1980*

(1) A visa petition by the natural child of his father and his father's "second" Chinese wife, for his father's "first" wife as his stepmother, is not based on a polygamous "marriage," and the beneficiary is eligible to derive an immigration benefit through the petitioner. *Matter of Stultz,* 15 I&N Dec. 362 (BIA 1974, 1975; A.G. 1975) followed. *Matter of Man,* 16 I&N Dec. 543 (BIA 1978) distinguished.

(2) The fact that a petitioner has already successfully petitioned for his natural mother does not preclude approval of a visa petition filed on behalf of a stepmother in the absence of a statutory bar such as that existing in section 101(b)(1)(E) of the Immigration and Nationality Act with respect to the natural parents of an adopted child.

ON BEHALF OF PETITIONER: Pro se

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

On December 5, 1978, the District Director entered a decision denying the visa petition filed on behalf of the beneficiary as the petitioner's stepmother. He has certified his decision to the Board for review. The decision will be reversed, and the record will be remanded.

The petitioner is a 41-year-old native of China and citizen of the United States. The beneficiary is a 72-year-old native and citizen of China. The petitioner claims that the beneficiary is his stepmother and that he lived in the same household with her from the date of his birth until 1969. It appears from the record that the beneficiary married Fong Tack-Wah, the petitioner's father, on April 1, 1924. Fong Tack-Wah "married" a second woman, the petitioner's mother (Tsang Bik-Lin) on June 10, 1933. The record contains the sworn statement of Tsang Bik-Lin, dated October 14, 1976, in which she states that she is Fong Tack-Wah's "second" wife, that she bore him three children, one of whom is the petitioner herein, and that she, her husband, his "first" wife (the beneficiary herein) and their children all lived in the same household.

In his decision denying the visa petition, the District Director determined that the only relationship between the petitioner and the beneficiary was as a result of a "quasi-polygamous" marriage, and accordingly, the visa petition could not be approved. We disagree.

In *Matter of Man*, 16 I&N Dec. 543 (BIA 1978), we were presented with a visa petition filed on behalf of a "second" wife (or concubine) by the child of her "husband" and his "first" wife. The petitioner in that case claimed that the beneficiary was his stepmother within the meaning of the immigration laws. We reviewed our previous cases dealing with concubinage[1] and found that we had never held that the secondary wife could derive or bestow immigration benefits through children born to her "husband" and his principal wife. We denied the visa petition, therefore, because the sole relationship between the beneficiary and the petitioner in *Matter of Man*, *supra*, was the polygamous "marriage," finding that "Congress did not intend to accord preference status on the basis of such relationships in view of the clear disfavor it expressed towards polygamy by excluding polygamists from entry into the United States under section 212(a)(11) of the Act, 8 U.S.C. 1182(a)(11)." *Id.* at 3.

The instant case presents a situation quite different from *Matter of Man*, *supra*. Here, the petitioner is claiming a relationship to his father's "first" wife. In *Matter of Stultz*, 15 I&N Dec. 362 (BIA 1974, 1975; A.G. 1975), we were presented with a visa petition filed by a child born of an illicit relationship between the married natural father and a woman to whom he has never married. Finding the existence of a bona fide family unit (*see generally Matter of Moreira*, Interim Decision 2720 (BIA 1979)), we granted the petition. The Attorney General affirmed our decision, recognizing that, regardless of whether the illegitimate child was born before or after the marriage, the natural father's wife could be considered the child's stepmother within the meaning of section 101(b)(1)(B) of the Act.

We find no crucial distinction between the facts in the present case and those in *Matter of Stultz*, *supra*. The petitioner herein was born subsequent to his father's marriage to the beneficiary, as was true in *Stultz*. That marriage was not polygamous, thereby distinguishing this case from *Matter of Man*, *supra*. Accordingly, we find no bar in the statute to approval of the instant petition, nor do we find the presence of the policy considerations that led us to deny the petition in *Matter of Man*, *supra*.

The decision of the District Director indicates that the petitioner

---

[1] *See, e.g., Matter of Kwong*, 15 I&N Dec. 312 (BIA 1975) (child of a concubine with the status of *tsip* can be considered a legitimate child under Hong Kong law) modifying *Matter of Kwan*, 13 I&N Dec. 302 (BIA 1969).

also filed visa petitions on behalf of his father and his natural mother which have been approved. The approval of these petitions, unlike the situation in *Matter of Man, supra,* is not based solely on the relationship created by the polygamous "marriage": the petitioner qualifies as his father's and mother's legitimate child under section 101(b)(1)(A) of the Act. *See Matter of Kwong,* 15 I&N Dec. 312 (BIA 1975). The fact that the petitioner has already successfully petitioned for his mother does not preclude approval of a visa petition filed on behalf of his stepmother. Existing legislation regarding familial relationships constrains us to find that a petitioner can successfully petition both for a stepmother and a mother. *Compare* section 101(b)(1)(E), which specifically cuts off any immigration rights of the natural parents of an adopted child. No similar provision exists with respect to step-relationships.

Although we have determined that there is no statutory bar to approval of the present visa petition, the inquiry into the relationship between the petitioner and the beneficiary has not ended. In addition to meeting the requirement of section 101(b)(1)(B) of the Act that the marriage creating the stepchild relationship occur before the stepchild's eighteenth birthday, the petitioner must also establish that the stepparent had an active parental interest in the stepchild's support, instruction, and general welfare prior to the child's eighteenth birthday. *See generally Matter of Moreira, supra.* The record in the present case states only that the petitioner, the beneficiary, her husband, and his concubine lived together in one household. There is no indication whether the beneficiary merely tolerated the petitioner's presence in the family home, or if she took an active part in his upbringing. Accordingly, we will remand the record to enable the petitioner to introduce additional evidence in support of the petition. The District Director should then enter a new decision in accordance with *Matter of To,* 14 I&N Dec. 679 (BIA 1974).

ORDER: The record is remanded to the District Director for further proceedings consistent with this opinion.