MATTER OF SOARES

In Visa Petition Proceedings

A-17452700

*Decided by District Director December 27, 1967*
*Decided by Board March 6, 1968*

Beneficiary, the illegitimate child of the United States citizen petitioner's husband and another woman, who at all times has resided with his natural mother and who has never been a part of the family unit of petitioner and her husband, is not the stepchild of the petitoner within the meaning of section 101(b) (1) (B) of the Immigration and Nationality Act, as amended.

ON BEHALF OF PETITIONER:      Daniel J. Donahue, District Agent
Division of Immigration and Americanization
Department of Education
51 Franklin Street
Fall River, Massachusetts 02720

**BEFORE THE DISTRICT DIRECTOR**

This discussion concerns the visa petition filed by the wife of the putative natural father of a child born out of wedlock, which seeks to classify the beneficiary as a stepchild within the meaning of section 101(b) (1) of the Immigration and Nationality Act.

The beneficiary was born in Portugal on March 26, 1955 and still resides there with his natural mother.

The petitioner claims birth at Onset, Massachusetts in 1916 and that she was brought to Portugal by her parents a year later, where she resided until she reentered the United States as a United States citizen with a United States Passport on July 25, 1958.

The claimed citizenship of the petitioner is not supported by a birth certificate. It appears a delayed record of her birth may have been created. Presumably this would have occurred since May 7, 1957 since our file contains a copy of a certification by the Secretary of the Commonwealth of Massachusetts, dated May 7, 1957, to the effect that a search was made of the records of his office for the birth record of Armandina Monteiro or Armandina Centeio (the petitioner) in the Commonwealth from 1911 through 1920 and that said record had not been found.

The record contains affidavits from persons in the United States asserting that petitioner was born as claimed—and it appears her United States Passport was issued as the result of such affidavits. We wish there were more convincing evidence of her United States birth but since the petitioner has been admitted to the United States as a citizen of this country and no evidence has come to light to establish that she is not, we shall accept the premise that she is a citizen of the United States.

On November 9, 1966 the petitioner testified before an Immigrant Inspector at Boston that she has been married but once, in Portugal on May 7, 1958, to Antonio Soares—the putative father of the beneficiary. She testified also that this was the only marriage of Antonio Soares; that Antonio Soares was never married to the mother of the beneficiary and that the beneficiary has never lived with the petitioner.

The files of this Service show that the petitioner's daughter Madelina Monteiro Soares (A–14 748 512) was born in Portugal on March 18, 1954 of the union of the petitioner and Antonio Soares prior to their marriage in 1958—and that the same is true of John Monteiro Soares (A–14 747 892) who was born in Portugal on April 27, 1946. Both these siblings are now in the United States. The Services files of these two persons were reviewed in conjunction with the subject petition in an effort to obtain information to establish whether a family unit existed in which the present beneficiary was an integral part or whether the beneficiary is shown in the relationship now claimed in the subject petition. They contain no mention of the beneficiary but this omission is not particularly significant since he was not involved in their relationship to the petitioner, as it affected their admissibility to the United States.

It appears from a review of the entire record that the petitioner and Antonio Soares lived together in Portugal for a period of nine years before the beneficiary was born to another woman—and for three years thereafter—before they were married to each other.

Submitted with this petition is a birth record dated October 8, 1965 in which Antonio Soares is named as the father of the beneficiary, and Adelina Gomes as his mother: Antonio Soares is shown therein as single and Adelina Gomes as a widow. There has been no claim made that the beneficiary was ever legitimated by Antonio Soares or adopted by him. No claim has been made that he "affiliated" the beneficiary in any action before the Portuguese authorities in the familiar "Perfilhacao" process.

In support of the petition there has been submitted an affidavit by Adelina Gomes Oliveira, also known as Adelina Gomes, dated February 26, 1966, to the effect that she is the mother of the beneficiary, that Antonio Soares is his father, that she is still a widow, and that

654

the beneficiary has been supported by Antonio Soares since the beneficiary's birth. In it she releases the beneficiary for emigration to the United States and for adoption by Antonio Soares and the latter's wife, the petitioner.

This petition is based on the provisions of section 101(b)(1)(B) of the Immigration and Nationality Act.

As we accept the claim to citizenship of the petitioner, we also accept the claimed blood tie between the beneficiary and his putative natural father. What remains therefore to be determined is whether the beneficiary is the "stepchild" of the petitioner, within the meaning of section 101(b)(1)(B) of the Immigration and Nationality Act.

Section 101(b)(1) of the Act defines a "child" as an unmarried person under 21 years of age who is—

(A) a legitimate child; or

(B)* a stepchild, *whether or not born out of wedlock* provided the child had not reached the age of 18 years at the time the marriage occurred; or

(C) a child legitimated under the law of the child's residence or domicile whether in or outside the United States, if such legitimation takes place before the child reaches the age of 18 years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

(D)** an illegitimate child, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother.

(E)** a child adopted while under the age of 14 years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: Provided, that no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act.

(F)* a child, under the age of 14 at the time a petition is filed in his behalf to accord a classification as an immediate relative under section 201(b), who is an orphan because of the death or disappearance of, abandonment or desertion by * * *.

Section 101(b)(2) of the Act defines a "parent", "father" or "mother" to mean a parent, father, or mother *only* where the relationship exists by reason of any of the circumstances outlined in section 101(b)(1) as indicated above.

It is clear that the sole tie between the petitioner and the beneficiary is derived through Antonio Soares. The petitioner herself has testified that the beneficiary has never lived with her and has always lived with his natural mother. It appears that no family unit has ever existed in which the petitioner filled the maternal role for the beneficiary.

---

*Amended by the Act of September 11, 1957; **Entire paragraph added by the Act of September 11, 1957.

When the Immigration and Nationality Act was enacted in 1952, Section 101(b) (1) "A", "B", and "C" read as follows:

(A) a legitimate child; or

(B) a stepchild, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred; or

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

Five years later the section was amended, on September 11, 1957, with reference to the illegitimate child, to add subparagraph (D) and to amend paragraph (B) to include the phrase "whether or not born out of wedlock".

In so amending this section of the statute, Congress obviously took cognizance of the plight of the illegitimate child whose separation from his natural mother could ensue because the original statute had failed to specify that an illegitimate offspring was included in the definition of "child" in section 101(b) (1) of the Act.

Congress obviously recognized as well that in the natural sequence of events, the illegitimate child could be an integral part of a family unit headed by his mother and her spouse and would be dependent on the latter as stepfather for his support and protection.

Less clear is the intention of Congress in defining the "stepchild" in section 101(b) (1) (B) with relation to the spouse of the natural father of the illegitimate child.

We can see that section 101(b) of the Act has never included in its definition of "child" the illegitimate child by, through whom, or on whose behalf a status, privilege or benefit is sought by virtue of the relationship of the child to its natural father. In fact, section (D) (dated September 11, 1957) makes it plain that the illegitimate child will obtain such benefit, status or privilege by virtue of the relationship to his natural mother.

Is it possible that Congress on September 11, 1957 on one hand made sure that the illegitimate child could be a "child" for the purposes of section 101(b) of the Act *only* where the status, benefit or privilege is being sought by virtue of the relationship of the child to its natural mother—excluding the natural father from the picture—yet, at the same time gave to the wife of the natural father a right he himself does not have?

The Service has heretofore found this premise unacceptable and has in essence held that Congress intended that subsection 101(b) (1)(B) demands the basic prerequisite relationship of "child" to

"parent" before the relationship of "stepchild" could occur with regard to the spouse of the "parent".

Since the natural father of the illegitimate child is not a "parent" or "father" within the definition of section 101(b)(2) of the Act—can his wife who may never have even seen his illegitimate offspring, have under the law a right denied to him?

The question narrows simply to—What did Congress intend? Or, what does the statute actually say?

There have been few precedents to help us. There are only two reported Court decisions in point, i.e., Nation v. Esperdy, 239 F. Supp. 531 (U.S.D.C., S.D., N.Y. 1965) and Andrade v. Esperdy, 270 F. Supp. 516 (U.S.D.C., N.Y., July 13, 1967).

In Nation the beneficiary was born out of wedlock in 1947 and was abandoned by his natural mother. The petitioner assumed the care of the beneficiary in 1949—three years before her marriage to the child's natural father. In 1957 the petitioner came to the United States to live and the natural father joined her in 1958. The child was left behind because no visa was available for him. When the petitioner acquired United States citizenship, she filed a visa petition for the beneficiary which was denied by this Service on the ground that the beneficiary was not a stepchild within the meaning of the statute. In Nation the Court stressed the preexistence of an established family unit of which the beneficiary and the petitioner were a part and held that the beneficiary was a "stepchild" within the meaning of section 101(b)(1)(B).

Following the Court's decision in the Nation case this Service held in the Matter of Morris, 11 I. & N. Dec. 587, that the beneficiaries— illegitimate children of the husband of a United States citizen petitioner—are not stepchildren of the latter within the meaning of section 101(b)(1)(B) of the Act since a step relationship does not exist as the petitioner had seen the beneficiaries only for very brief periods of time subsequent to her marriage to their natural father and a family unit between the parties has never existed, petitioners having been reared by their natural father's brother.

In the more recent case of Andrade—the Court reached the same ultimate conclusion as in the Nation case but denied the need to establish any preexisting family unit as a prerequisite to designating such a beneficiary as a "stepchild". The petitioner in the Andrade case was born in the United States and married the natural father of the child in 1959. At the time of their marriage, he had an illegitimate daughter, 11 years of age, who was born in Portugal and still lived there with her natural mother. In 1959 the natural father went to Portugal and recognized his daughter through the Portuguese "perfilhacao" procedure which is of course neither a legitimation nor adoption process

657

but is usually a means of acknowledging one's fatherhood of an illegitimate child. Both he and his petitioning spouse had furnished the child with financial support for many years. In the case of *Andrade*, the Court held that the Service had been wrong in denying the Andrade petition on the criterion that in the absence of a preexisting family unit encompassing the petitioner and the beneficiary, the beneficiary could not qualify as a stepchild. The Court held that the beneficiary was a stepchild and directed approval of the petition.

The *Nation* and the *Andrade* cases are more appealing, perhaps than the one here considered. We do not find here that a family unit has ever existed encompassing the petitioner and beneficiary; there is no evidence of an attempt to make formal legal acknowledgement of the paternity of the child—and there is no evidence of any special interest or concern for this child through the years by the petitioner herself.

It appears to us that the issue resolves into a consideration of whether *any* illegitimate child (who otherwise qualifies) is a stepchild of the woman to whom his natural father is married solely because of the existence of such marriage.

In the *Andrade* opinion the Court quoted at length from the Senate and House Reports of 1957 (S. Rep. No. 1057—85th Congress, 1st Sess. 4–1957) (H. Rep. No. 1199—85th Congress, 1st Sess. 7–1957) in support of the then proposed amendments to section 101(b) of the Immigration and Nationality Act with regard to the illegitimate child.

The Court in its opinion on *Andrade* commented with regard to such reports,

The legislative history of the subsection in question is quite meager. The Senate Report, on its face, indicates that perhaps a contrary result should have been reached in *Nation*:

"Section 1 of the Bill, as amended would amend the definition of the term 'child' as used in Titles I and II of the Immigration and Nationality Act for the purpose of alleviating certain hardships which have arisen as a result of an administrative interpretation that a child born out of wedlock to a woman who subsequently marries a man not the father of the child, is not included within the term "stepchild." The proposed amendment would clarify the law in such manner as to make it clear that a child born out of wedlock in relation to its mother may be included in the term 'stepchild' and thereby enjoy the same immigration status as other stepchildren. The committee believes that this would accomplish the original intent of the section." S. Rep. No. 1057, 85th Cong., 1st Sess. 4 (1957).

It seems clear, however, that the Senate used the feminine word "mother" instead of the neuter "parent" because it was reacting to a particular obnoxious administrative action.

The House, too, was aware of unwarranted administrative action:

"Shortly after the Immigration and Nationality Act became effective on December 24, 1952, the attention of the committee was called to the administrative interpretation of the term 'child' as defined for the purposes of Titles I and II of the

658

Act. On April 16, 1953, the Board of Immigration Appeals of the Department of Justice held that a child born out of wedlock is eligible for nonquota status on the basis of a petition filed by its stepfather, a United States citizen and legal husband of the mother of such child. However, on June 3, 1953, the Attorney General reversed the decision of the Board and ruled that a child born out of wedlock prior to the marriage of its mother to a United States citizen is not a 'stepchild' within the meaning of section 101(b)(1)(B) *supra*. On February 3, 1954 the Attorney General rules (sic) that an illegitimate child was not eligible— for a nonquota status on the basis of a visa petition filed by the United States citizen mother of the child. The Committee's request for reversal of these two decisions met with no success.

"Subsequent decisions of administrative officers operating under the Attorney General follow the line of the interpretation above summarized and actually extend it to apply in the case of a United States citizen, born out of wedlock, who under section 203(a)(2) of the Immigration and Nationality Act sought to confer second preference status under the quota upon his mother (decision of April 2, 1957, in the case of VP 2-I-22869).

"In view of the fact that the committee's attempts to clarify legislative intent remains unsuccessful, it is believed that there is need for the enactment of the instant section, in order to alleviate hardship and provide for a fair and humanitarian adjudication of immigration cases involving children born out of wedlock and the mothers of such children. (H. Rep. No. 1199, 85th Cong., 1st Sess. (1957) U.S. Code Cong. & Admin. News 1957, p. 2020.

In its summary, however, the House used neuter language:

"Sympathetic and humane considerations dictate an interpretation (sic) which would not separate the child, whether legitimate or illegitimate, from its alien parent, particularly in those cases where the citizen parent has executed a petition for the issuance of a nonquota visa to such child and has evidenced an intent to regard the illegitimate stepchild of his spouse as a part of his own family unit. There is ample judicial authority to support a construction that would include the illegitimate child of the spouse as the stepchild of the person who has *married* the *parent* of that child." *Id.* at 8, U.S. Code Cong. & Admin. News 1957, p. 2031.

The Court in the *Andrade* opinion saw in these Reports the intent of Congress to include in section 101(b)(1)(B) as the "stepchild" of the spouse of the putative natural father, the illegitimate offspring of such father.

We have given much consideration to the same Reports and find in them support of Congress' intent to protect the illegitimate child, who traditionally is dependent on his mother for care, sustenance, name, *etc.* and to provide for such child a continuance of care and sustenance through such mother should she later marry and become part of a new home.

The use of the neuter form "parent" in the Summary of the House Report (mentioned in *Andrade*) instead of "mother" in our opinion is not of great significance, since the Summary refers to the "person who has married the *parent* of that child" and the Congress has left undisturbed the original form of section 101(b)(2) defining a "parent"

in such a way as to exclude the natural father of the illegitimate child in the absence of legitimation or adoption.

Accordingly considerable doubt remains in our mind that Congress actually had the intent found by the Court as shown in *Andrade* in view of its restriction of derivative rights or benefits to the illegitimate child solely through his natural mother. We agree that the Statute is not clear. It is the duty of the Courts to interpret the law when there is doubt as to its intent and meaning. In view of the broad interpretation of this statute by the Courts in the two cited cases above, we hereby grant the subject petition and direct that the beneficiary be classified as the stepchild (immediate relative) of the petitioner. (All italic supplied.)

## BEFORE THE BOARD

The case comes forward pursuant to certification by the District Director, Boston District, of the decision dated December 27, 1967 granting the visa petition and directing that the beneficiary be classified as a stepchild (immediate relative) of the petitioner.

The petitioner, whose citizenship status as a native-born citizen is conceded for the purpose of this decision, 51 years old, female, married, seeks immediate relative status on behalf of the beneficiary as her stepchild. The beneficiary is a native and citizen of Portugal, born March 6, 1955, male.

An attachment of even date sets forth in detail the circumstances of the case and an application of the law, as well as a discussion of the court decisions in *Nation* v. *Esperdy*, 239 F. Supp. 531 (S.D.N.Y., 1965) and *Andrade* v. *Esperdy*, 270 F. Supp. 516 (S.D.N.Y., 1967). We endorse the views expressed by the District Director and incorporate them as our own with the exception of the last sentence, which is at odds with the tenor of the preceding contents of the memorandum, and conclude that the visa petition should be denied. Inasmuch as the District Director's memorandum is so thorough, we shall discuss only certain phases of the case.

The petitioner married Antonio Silva Soares in Brava, Cape Verdi Island, Portugal on May 7, 1958. Prior thereto the petitioner and her husband had lived together as husband and wife at least since 1945, as evidenced by the birth of a son, John Monteiro Soares on April 27, 1946, and a daughter, Madelina on March 18, 1954. Thus the petitioner and Antonio, the natural father of the beneficiary, had lived together for about 10 years prior to the beneficiary's birth on March 26, 1955 as the result of illicit intercourse with a widow, Adelina Gomes. The beneficiary never lived in the household of the petitioner and her husband but always remained with his natural mother, as evidenced by a sworn statement taken from the petitioner on November 9, 1966.

There has been submitted a birth record of the beneficiary dated October 8, 1965 in which the beneficiary is described as the son of Antonio Soares, single, and of Adelina Gomes, widow. The beneficiary has never been legitimated as were the other two children of the petitioner and her husband by their subsequent marriage, nor is there even any claim that the birth record constitutes a "perfilhacao" or recognition of the beneficiary by the putative father. The petitioner stated that her husband sends the beneficiary $15 or $20 a month, but the commencement of the date of such support is not known.

In *Nation* v. *Esperdy*, 239 F. Supp. 531, Judge Feinberg stated that while on balance it was fair to say that the legislative history more clearly focuses on the mother-child relationship and tended to support the Government's position, the legislative history was not conclusive, and suggested conflicting interpretations (p. 538). Judge Feinberg was persuaded *on the facts of the case* that the beneficiary was the plaintiff's stepchild, inasmuch as the plaintiff, her husband and the beneficiary had concededly been a close family at the outset, and immediately after citizenship was secured, plaintiff petitioned to reunite the family unit.

In *Andrade* v. *Esperdy*, 270 F. Supp. 516, the beneficiary, Maria, was born out of wedlock on June 5, 1948 before her father married the petitioner, Viola, on July 5, 1959. In May, 1959 the father unsuccessfully tried to adopt Maria but suceeded only in affiliating her. During the Andrades' period of courtship since 1953, the future Mrs. Andrade often wrote to Maria and referred to themselves as mother and daughter, and since their marriage the Andrades had sent Maria $50 a month out of their joint bank account. Judge Edelstein stated that the humane considerations of preserving a preexisting family unit and those of creating a unit out of the likeliest of parts, *viz*, a child, its natural parent and a stepparent when circumstances have kept them apart, are indeed in harmony. The court went on to refer to some irrelevant matters such as the fact that the petitioner was a native-born citizen and her father entered the United States in 1920; that the court did not see how the beneficiary could be a threat to the security or well-being of the people of the United States (pp. 520-521). Judge Edelstein rejected Judge Feinberg's emphasis on a preexisting bona fide family unit which included this illegitimate stepchild, the natural father and the stepmother, and granted a summary judgment on behalf of the plaintiff.

The instant case would go even a step further than the *Andrade* case. It is conceded that there never existed a family unit, and that at all times the beneficiary resided with her natural mother. This beneficiary was born to another woman during an already long pre-

existing marital relationship which was regularized by the marriage of the petitioner and her husband on May 7, 1958, which legitimated the children born of that relationship.[1] We are not prepared to extend the holding in *Andrade* v. *Esperdy*, 270 F. Supp. 516 (S.D.N.Y.), to the situation in the instant case, which arises in another Circuit.

Considerable doubt exists that Congress actually had the intent found in *Andrade*, in view of its restriction of derivative rights or benefits to illegitimate child solely through its natural mother. A citizen or resident alien is unable to confer immediate or preference status upon his illegitimate son, but under the holding in *Andrade*, his wife and stepmother (assuming the existence of such a relationship in this case) is able to confer that status on his son by reason of her relationship to his illegitimate son. This result imputes to Congress the unlikely intention of favoring a relationship by affinity over a closer one of consanguinity. The *Nation* case requirement of a close preexisting family unit makes the result reached in that case acceptable on humanitarian and sympathetic grounds. The facts in the instant case do not.

The burden rests upon the petitioner to establish eligibility for the benefit she seeks under the immigration laws. We hold that the petitioner has not discharged such burden. The visa petition will be denied.

ORDER: It is ordered that the visa petition be and the same is hereby denied.

---

[1] Cf. *Matter of Young*, Int. Dec. No. 1762 and Int. Dec. No. 1819.