MATTER OF MOREIRA

In Visa Petition Proceedings

A-22211458

*Decided by Board July 16, 1979*

(1) A visa petition by a "stepmother" on behalf of the illegitimate child of her husband requires a showing that the stepparent has, prior to the child's eighteenth birthday, evinced an active parental interest in the child's support, instruction, and general welfare.

(2) The mere fact of a marriage creating a technical relationship of stepparent, without more, does not establish a stepparent-stepchild relationship for visa petition purposes. *Matter of Amado and Monteiro*, 13 I&N Dec. 179 (BIA 1969); *Matter of Soares*, 12 I&N Dec. 653 (BIA 1968), clarified; *Andrade v. Esperdy*, 270 F. Supp. 516 (S.D.N.Y. 1967); *Nation v. Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965), interpreted.

(3) Whether a stepparent-stepchild relationship exists for immigration purposes is a question of intent, and a showing that the parents lived together as a "close family unit" is not necessarily required. The relationship may be established by a showing that the parent intended to treat the child as her own, either by permitting the child to live in the family home and caring for him as a parent, or, if the child did not live with the stepparent, by demonstrating an active parental interest in the child's welfare.

(4) Taking into account barriers of distance, national boundaries, and immigration restrictions, an established parent-child relationship could overcome the fact that the parties never lived together in determining the existence of a steprelationship recognized under the Immigration and Nationality Act.

(5) The legislative history of the Immigration and Nationality Act, which expressed primary concern for the reunification of families, as well as the case law, and prior Board decisions, support a definition of stepchild which requires the existence of bona fide family ties and parental concern.

(6) In the case of a petition by a stepparent for a stepchild, it is irrelevant whether the beneficiary is legitimate or illegitimate. *Matter of Ferreira*, 16 I&N Dec. 494 (BIA 1978); *Matter of Gur*, 16 I&N Dec. 123 (BIA 1977); *Matter of Heung*, 15 I&N Dec. 145 (BIA 1974), modified.

ON BEHALF OF RESPONDENT:
James J. Orlow, Esquire
636 Public Ledger Building
Sixth & Chestnut Streets
Philadelphia, Pennsylvania 19106

ON BEHALF OF SERVICE:
David Crosland
General Counsel

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The Immigration and Naturalization Service has moved for reconsideration of our decision dated January 5, 1979. The motion will be granted.

The petitioner, a 51-year-old native of Argentina and citizen of the United States, filed a visa petition on February 9, 1977, seeking to accord the beneficiary, a 24-year-old native and citizen of Argentina, preference status as her stepchild pursuant to section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(1). In support of her petition, the petitioner submitted the beneficiary's birth certificate, stating that he was born on September 6, 1954, to Francisca Benitez and Patrocinio Moreira. The birth certificate indicates that the beneficiary's parents were not married at the time of his birth, and no claim is advanced that they subsequently married. In addition, the petitioner submitted her marriage certificate which establishes that she married Patrocinio Moreira on May 12, 1972.

In his decision dated November 30, 1977, denying the visa petition, the District Director found that the beneficiary was the illegitimate child of Patrocinio Moreira, and that he had never been legitimated by the marriage of his natural parents. The District Director then determined that the beneficiary did not qualify as the petitioner's stepchild in that the petitioner, her husband, and the beneficiary had never lived in a close family unit as required by our decision in *Matter of Amado and Monteiro*, 13 I&N Dec. 179 (BIA 1969). On appeal, we remanded the record to the District Director for further consideration in light of a memorandum from the Service, dated December 11, 1978, in which the Service indicated their willingness to have the decision in *Andrade* v. *Esperdy*, 270 F. Supp. 516 (S.D.N.Y. 1967), applied on a nationwide basis. That decision rejected the requirement that a close family unit need be shown before a visa petition filed on behalf of an illegitimate stepchild could be approved.

In its motion for reconsideration now before the Board, the Service asks that we determine whether or not the *Andrade* rule should be applied on a nationwide basis, thereby either overruling or reaffirming our prior decisions in *Matter of Amado and Monterio, supra,* and *Matter of Soares*, 12 I&N Dec. 653 (BIA 1968). Counsel for the petitioner joins in this request by the Service, and also asks that we approve the visa petition filed by the petitioner on the beneficiary's behalf.

In 1957, the Immigration and Nationality Act was amended to specify that an illegitimate child is the "child" of his natural mother and that a stepchild is a "child" regardless of whether he is legitimate or illegitimate. Act of September 11, 1957, Public Law No. 85-316, § 2, 71 Stat. 639. Section 101(b)(1)(B) of the Act, 8 U.S.C. 1101(b)(1)(B), as amended, defines child to include a "stepchild, whether or not born out of wedlock, provided the child had not reached

the age of eighteen years at the time the marriage creating the status of stepchild occurred." In *Matter of W—*, 7 I&N Dec. 685 (BIA 1958), we reviewed the 1957 legislative change which resulted in the present language of section 101(b)(1)(B) and concluded that it required no change in the prior administrative view that a child born out of wedlock derives no benefit, status, or privilege under the immigration laws in relation to its father and, accordingly, that the illegitimate child of a father married to a United States citizen is not the wife's stepchild and cannot qualify for a nonquota or a preference status.

In *Nation v. Esperdy*, 239 F. Supp. 531 (S.D.N.Y. 1965), a decision by Judge Feinberg, the court examined the legislative history of section 101(b)(1)(B) and concluded that an illegitimate child of a father could qualify under the statute as the stepchild of the father's spouse. In *Matter of The*, 11 I&N Dec. 449 (BIA 1965), we considered the *Nation* decision and found the court's interpretation of section 101(b)(1)(B) persuasive, overruling our contrary decision in *Matter of W—, supra*. Finding ample evidence in *Nation* of the existence of a bona fide family unit between the petitioner, the beneficiary, and the natural father of the beneficiary, and finding similar favorable factors in *The*, we adopted the holding of *Nation* on its facts. However, we stated that our conclusion would not foreclose further examination of the application of the *Nation* case to a different set of facts not clearly within the scope of the decision. Indeed, in *Matter of Aleo*, 11 I&N Dec. 455 (BIA 1965), we upheld the denial of a visa petition filed by the petitioner on behalf of a beneficiary, the illegitimate child of her husband, citing as one of our reasons the absence of a family unit between the petitioner, the beneficiary, and the beneficiary's father. *See also Matter of Morris*, 11 I&N Dec. 537 (BIA 1966); *cf. Matter of Bourne*, 16 I&N Dec. 367 (BIA 1977).

In *Andrade v. Esperdy, supra*, an opinion by Judge Edelstein, the court struck down the requirement of a close family unit. In the absence of a definitive interpretation of the statute, and finding the court's reasoning unpersuasive, we declined to apply *Andrade* outside the Southern District of New York. *Matter of Amado and Monteiro, supra; Matter of Soares, supra. See also Matter of Harris*, 15 I&N Dec. 39 (BIA 1970).

In their motion for reconsideration now before the Board, the Service argues that we should apply the rule of the *Andrade* case nationwide, thereby overruling our prior decisions to the contrary. Counsel for the petitioner joins in the Service motion insofar as urging the abandonment of the close family unit requirement where a visa petition is filed on behalf of an illegitimate stepchild. The Service advances several arguments in support of their motion: first, that there is no clear legal distinction between the situation in *Andrade* and that

present in *Nation*, applied by the Board on a nationwide basis; second, the citation of *Andrade* approvingly in the Attorney General's opinion in *Matter of Stultz*, 15 I&N Dec. 362 (BIA 1974, 1975; A.G. 1975); and third, the lack, since 1967, of a uniform interpretation of the Act regarding stepchildren. There is some merit in these arguments, particularly the first one. However, neither *Andrade* nor *Nation* analyzes the elements of a stepparent-stepchild relationship which are needed in addition to the formal fact of marriage in order to establish mutual rights and obligations as a matter of law.

In *Nation* v. *Esperdy, supra,* the beneficiary was born out of wedlock to the petitioner's future husband and another woman in Kingston, Jamaica, on February 12, 1947. The beneficiary was abandoned by his natural mother. The petitioner began caring for the beneficiary in 1949 and married the beneficiary's natural father in 1952. The petitioner immigrated to the United States in 1957, and her husband followed a year later. The beneficiary was left behind due to the unavailability of a visa for him. The petitioner became a naturalized citizen in 1962, and immediately petitioned for the beneficiary's admittance to the United States on a nonquota visa.

In *Andrade* v. *Esperdy, supra,* the petitioner married Pedro Andrade on July 5, 1959. Prior to their marriage, Andrade had fathered an out of wedlock child, the beneficiary, who was born on June 5, 1948. The petitioner had known her husband sometime before 1953, at which time they began keeping company. He told his future wife about the child, to whom he had been sending money, food, and clothing. During their courtship, the petitioner corresponded with the beneficiary, such correspondence continuing after their marriage. The petitioner and the beneficiary referred to each other as "mother" and "daughter" in their letters. After the petitioner married the beneficiary's father, they continued to send the beneficiary money each month from their joint bank account. It was clear from the facts of that case that Mrs. Andrade's relationship to the beneficiary was based on more than the mere fact of her marriage to the child's father: her actions demonstrated that she thought of herself as the beneficiary's mother. The Service urged the court to uphold the denial of a visa petition filed on behalf of the beneficiary by Mrs. Andrade, urging that, because the three parties involved had not lived together in a "close family unit," the beneficiary could not be considered to be a "stepchild" within the meaning of section 101(b)(1)(B) of the Act. The court, rejecting this restrictive interpretation of that section, found that the visa petition should be approved, noting that the petitioner "obviously wants [the beneficiary] here." 270 F. Supp. at 520.

Although Judge Edelstein in *Andrade* disapproved of the "preexisting family unit" test then urged by the Service, there were in fact close

family ties in that case, evidenced by Mrs. Andrade's continuing interest in the well-being and general welfare of the beneficiary. In fact, the situation in *Andrade* can be distinguished from that in *Nation* only by the fact that in *Nation*, the parties had at one time (8 years prior to the time the visa petition was filed) lived together.

*Nation* does not require that decisions in this area be based upon a rigid requirement that the parties have at some time lived together. Rather, there should be inquiry into whether the stepparent has evinced an active parental interest in the stepchild's support, instruction, and general welfare. Certainly, if the child has lived in his stepparent's home, it would indicate that the stepparent has shown such an interest. However, the mere fact that a child has lived with his stepparent should not in every case warrant a finding that the stepparent intends to act as a parent, just as the fact that a stepparent has never lived with his stepchild should not always mean that the stepchild cannot qualify as a "child" for immigration purposes. If the totality of evidence indicates that the stepparent merely tolerated the child's presence, a finding of no stepparent-stepchild relationship would be appropriate. On the other hand, taking into account barriers of distance, national boundaries, and immigration restrictions, an established parent-child relationship, as in *Andrade*, could overcome the fact that the parties never lived together in determining existence of a relationship recognized under the Act.

In the instant case, the petitioner appears to argue that the mere fact of her marriage to the beneficiary's father is alone sufficient to establish that the beneficiary is her stepchild within the meaning of section 101(b)(1)(B) of the Act. She relies on *Andrade* v. *Esperdy* for this proposition; we do not agree that Judge Edelstein's opinion requires such a result. The proper interpretation of *Andrade* requires that, in addition to the "mere fact" of a marriage, an actual parent-child relationship exist, even though the parties may not have actually lived together as a family.

The term "stepchild," as used in the Act, must be defined in light of the Congressional intent of reuniting families. In enacting the 1957 Amendments to the Immigration and Nationality Act, the expressed intent of Congress was to "provide for a liberal treatment of children," expressing concern with "the problem of keeping families of United States citizens and immigrants united." H.R. No. 1199, 85th Cong., 1st Sess., *reprinted in* [1957] U.S. Code Cong. & Ad. News p. 2020. Similarly, when Congress enacted the Immigration Reform Act of 1965, it declared that "[r]eunification of families is to be the foremost consideration." S. Rep. No. 748, 89th Cong., 1st Sess., *reprinted in* [1965] U.S. Code Cong. & Ad. News p. 3332. Thus, the legislative history supports a definition of stepchild which would preserve relationships where bona

fide family ties exist, rather than one that recognizes a simple marriage ceremony as entitling a person to the approval of a visa petition.

The case law further reinforces such a definition. In a leading case involving the stepchild relationship, *Miller* v. *United States*, 123 F.2d 715 (8 Cir. 1941), *rev'd on other grounds*, 317 U.S. 192 (1942), the appellant was charged under 18 U.S.C. § 408(a) (1940 Ed.) ("The Lindbergh Act") with the kidnapping of Dorothy Garner, the illegitimate daughter of the appellant's wife. Dorothy Garner, the kidnap victim, was approximately 18 months old when her mother married the appellant. She lived in their household for about 4 months. Thereafter, she lived with her grandfather until, at the age of 15, her mother consented to her marriage to Will Garner. The appellant argued that, as the husband of the mother of Mrs. Garner, he was a parent within an exception to the statute providing penalties for kidnapping. The court found that the appellant was not the victim's stepparent as that term is defined by common usage. In its opinion, the court stated that: "A stepparent, by reason of this relationship alone, has no right to the custody or control of the stepchild. Nor has he any duty to support the stepchild. . . . The assumption of the relationship is a question of intention." 123 F.2d at 717. (Citations omitted.)

Similarly, in *State* v. *White*, 116 Ohio App. 522, 189 N.E.2d 160 (Ct. App. 1962), a prosecution for enticement of a child with unlawful intent in violation of section 2901.33 of the Ohio Revised Code, the court recognized the rule that a stepparent, by virtue of that relationship alone, does not stand *in loco parentis* to a stepchild. The court reviewed the evidence, finding that the defendant-stepfather was unemployed and without funds, and did not support the child, determining, therefore, that the defendant had no right of custody giving him the legal authority to take the child from school in violation of the statute. *See also State* v. *Gillaspie*, 8 Wash. App. 569, 507 P.2d 1223 (1973); *State* v. *Smith*, 485 S.W. 461 (Ct. App. Mo. 1972); *McManus* v. *Hinney*, 35 Wis. 2d 433, 151 N.W.2d 44 (1967); *Brummit* v. *Commonwealth*, 357 S.W.2d 37 (Ct. App. Ky. 1962); *Taylor* v. *Taylor*, 58 Wash. 2d 510, 364 P.2d 444 (1961); *Rutkowski* v. *Wasko*, 286 App. Div. 327, 143 N.Y.S.2d 1 (1955); *London Guarantee and Accident Co.* v. *Smith*, 242 Minn. 211, 64 N.W.2d 781 (1954); *Kransky* v. *Glen Alden Coal Co.*, 354 Pa. 425, 47 A.2d 645 (1946); *Austin* v. *Austin*, 147 Neb. 109, 22 N.W.2d 560 (1946); *Bunker* v. *Mains*, 139 Me. 231, 28 A.2d 734 (1942); *Trudell* v. *Leatherby*, 212 Cal. 720, 300 P. 7 (1931); *Doughty* v. *Thornton*, 151 Va. 785, 145 S.E. 249 (1928); note, *Stepchildren and In Loco Parentis Relationships*, 52 HARV. L. REV. 515 (1939). We find support in these cases for our holding that a steprelationship will be recognized for immigration purposes only where the stepparent has shown an interest in the stepchild's welfare prior to that child's eighteenth birthday,

either by permitting the child to live in the family home and caring for him as a parent, or, if the child did not live with the stepparent, by demonstrating an active parental interest in the child's support, instruction, and general welfare.

The interpretation of the term "stepchild" set forth today is also supported by prior Board decisions. In *Matter of Sobers*, 11 I&N Dec. 628 (BIA 1966), for example, the beneficiary, born in Barbados to the petitioner's husband and a woman to whom he was not married, was raised by her natural mother until the age of 9, at which time she was placed in an orphanage. When the beneficiary was 11 years old, her father left for the United States and thereafter married the petitioner. Prior to the beneficiary's eighteenth birthday, the petitioner had met the beneficiary on only one occasion, when the petitioner visited Barbados for 3 weeks, and the beneficiary was permitted to leave the orphanage in order to have dinner with the petitioner. We held that although the beneficiary came to the United States and lived with her father and the petitioner after her eighteenth birthday, no stepparent-stepchild relationship existed for immigration purposes. As there was nothing in *Sobers* to show that the petitioner had shown any parental interest in the beneficiary prior to the beneficiary's eighteenth birthday, that case is consistent with the test enunciated today.

The Attorney General's decision interpreting the term "stepchild," *Matter of Stultz*, 15 I&N Dec. 362 (A.G. 1975), also supports our present holding. In *Stultz*, the petitioner married in 1955, in Jamaica. In 1958, the beneficiary was born to the petitioner's husband and another woman. The beneficiary lived with her natural mother until the age of 2, when her natural mother abandoned her. The beneficiary's father took over her support until he left for the United States in December 1960. At that time, the petitioner began caring for the beneficiary, and cared for her until her own departure for the United States in 1962. After their arrival in this country, the petitioner and her husband made several trips to Jamaica, where they visited the beneficiary. They also sent approximately $100 a month to the couple with whom the beneficiary had been residing, for care and education of the beneficiary. The Attorney General's primary holding was that a child born of an adulterous relationship could qualify for stepchild status in the same way as a child born prior to the marriage creating the steprelationship. However, the Attorney General, in reaching this conclusion, discussed "the emotional bonds of a parent-child relationship." *Id.* at 6. Thus, it is evident that *Stultz* recognized the need for some sort of family tie as a prerequisite to a finding of a stepchild relationship.

In an analogous case, *Matter of Teng*, 15 I&N Dec. 516 (BIA 1975), we held that where a sham marriage is entered into for the purpose of obtaining immigration benefits, no actual family relationship exists

between the stepchildren and the United States citizen stepparent-petitioner. We emphasized in *Teng* the total lack of family ties between the children and their stepfather. We recognized then what we recognize today: that a steprelationship under the Immigration and Nationality Act requires more than a mere legal relationship; there must also be genuine familial bonds. For further Board cases lending support to our present interpretation of stepchild, *see Matter of Amado and Monteiro, supra, Matter of Morris, supra, Matter of Aleo, supra, Matter of The, supra.*

In *Matter of Miller*, 11 I&N Dec. 549 (BIA 1966), however, we reached a result contrary to that which would be reached under the test announced today. *Miller* involved a beneficiary born out of wedlock during the existence of her father's marriage to the petitioner. Although the beneficiary lived with her mother, she received support from the petitioner and her father and visited with them for extended periods. When she was 15 years old, she came to the United States and began living with her father and the petitioner. We found that no close family relationship had been shown and that the beneficiary therefore could not be considered the stepchild of the petitioner. Having reexamined this case, it now appears to us that the required parental concern for the beneficiary was shown prior to the beneficiary's eighteenth birthday and that the visa petition filed on the beneficiary's behalf should have been approved. *Matter of Miller* is hence overruled.

Several other Board decisions require clarification in light of today's decision. In *Matter of Ferreira*, 16 I&N Dec. 494 (BIA 1978), *Matter of Gur*, 16 I&N Dec. 123 (BIA 1977), and *Matter of Heung*, 15 I&N Dec. 145 (BIA 1974), visa petitions were filed on behalf of siblings, and approval was sought on the basis of a common stepparent. In these cases, the child needing the stepparent in order to create the sibling relationship was legitimate. We therefore approved each visa petition, without inquiry into whether or not a close family unit had been established. This approach, insofar as it made a distinction between legitimate and illegitimate stepchildren, was inconsistent with the express terms of the statute, which speaks of "a stepchild, whether or not born out of wedlock." Section 101(b)(1)(B) of the Act. We hold that, in order for a steprelationship to be established, there must be a showing that the child, whether legitimate or illegitimate, lived with and was cared for as the child of the stepparent, or that the stepparent otherwise evinced an active parental interest in the support, instruction, and general welfare of the child. To the extent that the *Ferreira, Gur*, and *Heung* decisions indicate otherwise with regard to legitimate stepchildren, they are hereby modified.

In the present case, the petitioner has introduced into evidence a

copy of the beneficiary's birth certificate which establishes that he is the illegitimate child of Patrocinio Moreira, the petitioner's husband. In addition, the petitioner's marriage certificate has been made part of the record, indicating that her marriage to the beneficiary's father took place before the beneficiary's eighteenth birthday, as required by section 101(b)(1)(B) of the Act. However, there is no evidence in the record regarding what relationship, if any, exists between the petitioner and the beneficiary in addition to the marriage of the beneficiary's father to the petitioner. Accordingly, we will remand the record to the District Director to enable the petitioner to introduce additional evidence in support of the visa petition. In the event of an adverse decision, the record should be certified to the Board for review.

As an alternative argument on appeal, the petitioner has claimed that, under the law of Argentina, the beneficiary is the legitimate child of the petitioner's husband and the visa petition should be approved on that basis. However, our decision remanding the record for further evidence regarding the relationship between the petitioner and the beneficiary does not depend upon whether the beneficiary is a legitimate or an illegitimate stepchild, and, as the beneficiary's father has not filed a visa petition on his behalf, we find that we need not reach the issue of whether the beneficiary is a legitimate child under the law of Argentina.

ORDER: The motion to reconsider is granted.

FURTHER ORDER: The record is remanded to the District Director.

FURTHER ORDER: In the event of a decision which is adverse to the petitioner, the record should be certified to the Board for review.