MATTER OF BONNETTE

In Visa Petition Proceedings

A-24209799

*Decided by Board November 5, 1980*

(1) Under the rule laid down in the Ninth Circuit in *Palmer* v. *Reddy*, 622 F.2d 463 (9 Cir. 1980), a visa preference is available to beneficiaries who become stepchildren prior to their eighteenth birthday as a class without qualification. *Matter of Moreira*, Interim Decision 2720 (BIA 1979) and *Matter of Moreira*, Interim Decision 2792 (BIA 1980) no longer apply in the Ninth Circuit.

(2) Beneficiary of a visa petition who was allegedly born out of wedlock to petitioner's husband became the petitioner's stepchild for immigration purposes in 1948 when the petitioner married the beneficiary's father, even though the petitioner and her husband did not know of beneficiary's existence until 1979, and despite the absence of evidence of parental interest or support prior to the beneficiary's eighteenth birthday.

(3) Where the beneficiary of a visa petition did not see his alleged stepmother and putative father until he was age 32, case remanded by Board for proof of identity of parties.

ON BEHALF OF PETITIONER: Dana Marks Keener, Esquire
Lawrence N. DiCostanzo, Esquire
Simmons and Ungar
517 Washington Street, Suite 301
San Francisco, California 94111

BY: Milhollan, Chairman; Maniatis and Maguire, Board Members. Board Member Appleman, Concurring.

This is an appeal from the decision of the District Director, dated January 10, 1980, denying a visa petition filed by a United States citizen petitioner to accord first-preference status to the beneficiary as her stepson under section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(1). The record will be remanded for further proceedings.

The petitioner, a United States citizen, seeks first-preference status on behalf of the beneficiary as her stepson. The beneficiary, a native and citizen of the Philippines, was born out of wedlock to the petitioner's husband and a woman he never married. The petitioner married the beneficiary's father in 1948, when the beneficiary was almost 2

years old. The petitioner and her husband did not become aware of the existence of the beneficiary until 1979. In his denial of the visa petition, the District Director stated that there was no evidence that the beneficiary has ever resided with the petitioner, or that she has had an active parental interest in the beneficiary's support, instruction, and general welfare.

In the instant case, it is conceded that the petitioner, the stepparent, had not shown an interest in the stepchild's welfare prior to his eighteenth birthday. While the circumstances of the case may not meet the test prescribed by this Board in *Matter of Moreira*, Interim Decisions 2720 and 2792 (BIA 1979 and 1980), we are bound in this case to apply the rule announced in *Palmer v. Reddy*, 622 F.2d 463 (9 Cir. 1980), which is binding in the Ninth Circuit. In *Palmer*, the court held that visa preference is available to beneficiaries who become stepchildren prior to their eighteenth birthday as a class without further qualification. Therefore, to the extent that the decision of the District Director relied on *Matter of Moreira, supra*, it is hereby overruled.

There remains the issue of the beneficiary's identity. He claims to be the natural son of the petitioner's husband. The petitioner and her husband first learned of the beneficiary in 1979, when he was 32 years old. The beneficiary submitted a photocopy of a birth certificate issued by the municipal authorities in Manila, certifying that a child was born to the petitioner's husband and another woman in October 1946. We are not yet convinced that he is in fact the child named in the proffered certificate. The petitioner argues that the beneficiary provided her with additional evidence such as: a 1946 letter from the petitioner's husband to the natural mother, and four snapshots of the two when they lived together in the Philippines. The petitioner should submit the letter and the photographs in support of this visa petition together with any additional evidence which may be available to prove the identity of the parties. Consequently, we will remand the record for further proceedings to provide the petitioner an opportunity to more fully establish the identity of the beneficiary as the natural son of the petitioner's husband.

ORDER: The record is remanded to the District Director for further proceedings consistent with the foregoing opinion.

CONCURRING OPINION:   Irving A. Appleman, Board Member

I concur with the majority. If the parties to this petition are whom they claim to be, we are compelled to grant the petition under *Palmer v. Reddy*, 622 F.2d 463 (9 Cir. 1980). According to that decision, "stepchild", as defined in 8 U.S.C. 1101(b)(1)(B), is to be interpreted literally and a "visa preference is available to stepchildren as a class without further qualification."

Nevertheless, I cannot help but feel some concern when *Palmer* v. *Reddy* is applied in this case. The beneficiary was allegedly born out of wedlock in 1946, in the Philippines. The claimed putative father married the petitioner in 1948. It is claimed that neither the petitioner nor the putative father knew of the existence of the beneficiary until 1979. By then the beneficiary was 32 years of age, married and divorced, and with three children of his own. (By then, also, his own mother, who presumably reared him, was deceased.) According to the brief on appeal, the beneficiary carried out his search for his father, "armed only with four old photographs" of his mother and the petitioner's husband and a "letter of 1946" to his mother from the petitioner's husband. We do not have this evidence in the record before us, although we do have a birth certificate showing Clarenz Bonet, Sr., as the father of an illegitimate child, Clarenz Bonet, Jr., born October 1, 1946, in the Philippines. The petition and brief set forth the date of birth as November 2, 1946.

In the normal familial relationship there is a continuity of communication which assures the existence of significant evidence of a relationship. That evidence is not in the file before us. In the circumstances of this case, it is not unreasonable to ask for proof that the birth certificate relates to this claimant and that he is indeed who he claims to be. I therefore concur in a remand so that this aspect of the record may be developed.

It should be noted that these are cases where legitimation, as recognized and defined under 8 U.S.C. 1101(b)(1)(C), has not occurred. Proof of identity and relationship are not always present. Opportunities for fraud and fraudulent substitution do exist. These considerations may have contributed to the requirement that the relationship be established before the child reaches the age of 18. We must also assume that the Congress knew what it was doing in 8 U.S.C. 1101(b)(1)(D), when it prescribed that immigration benefits to an illegitimate child may flow from its natural mother but not from the putative father. In our experience, "step child" petitions involve illegitimate children of the father (born in or out of wedlock, *see e.g., Matter of Stultz*, 15 I&N Dec. 362 (BIA 1974, 1975; A.G. 1975)) more often than legitimate offspring of a prior marriage.[1] For this reason, petitions of this sort are founded on a relationship to the stepmother, and not the putative father. With the test set up in *Matter of Moreira*, Interim Decision 2792 (BIA 1980), it was possible to determine the existence of at least a minimal stepmother relationship in harmony with the will of the Congress to encourage family union (or reunion). At the same time, the rule discouraged a direct violation of the prohibition against benefits flow-

---

[1] In fairness, this may be because of the appellate level at which we view them.

ing from the putative father to his illegitimate child. *Cf. Matter of Soares*, 12 I&N Dec. 653 (D.D. 1967; BIA 1968).

The issue was more than academic. For example, in *Matter of Amado and Monteiro*, 13 I&N Dec. 179 (BIA 1969), the petitioning "stepmother" had never had any contact with, and had never seen, either child. The children had lived with their respective natural mothers since birth (they were then aged 15 and 12, respectively) and presumably would want to continue living with them as soon as they could come to the United States. It appeared that the proof of the joining together of a family unit with the stepmother in the United States was highly tenuous. Again, many of these petitions are filed by and for siblings, one of whom is legitimate, the other not, with the stepmother as the common parent. It is perfectly conceivable to have a case where, upon learning of the existence of an illegitimate, adulterine child, the "stepmother" rejects the child and possibly even the father/husband and will have nothing to do with them thereafter. Under the "literal" rule of *Palmer* v. *Reddy*, a petition filed by a half-brother or sister, for that sibling, will have to be approved despite the fact that neither of them may have set eyes on one another, and that they are claiming through a "stepmother" who completely rejected the adulterine child *and still does*. Further, what does the Service do with a petition a "stepchild" files in due course after admission, in behalf of his *natural* mother, with whom he has spent his entire life and who has a far better claim to relationship in most cases, than the petitioner/stepmother? He may be, somewhat uniquely, one with two mothers for immigration purposes.

Regrettably, "the unqualified language" of 8 U.S.C. 1101(b)(1)(*B*), as viewed by the Court in *Palmer* v. *Reddy*, is in innate conflict with subparagraph (*D*) of the same section, and, in the language of an earlier decision, "imputes to Congress the unlikely intention of favoring a relationship by affinity over a closer one of consanguinity." *Matter of Soares*, 12 I&N Dec. 653, 662 (D.D. 1967); (BIA 1968). This is not the time nor is it the purpose of this separate opinion to rehash the complexities of subparagraph B. *Id.* at 656 ff. Suffice it to say that *Matter of Moreira, supra*, now vitally wounded, if not moribund, was an attempt by the Board to bring some harmony to the discordant elements in *Matter of W—*, 7 I&N Dec. 685 (BIA 1958); *Matter of Soares, supra; Nation* v. *Esperdy*, 239 F.Supp. 531 (S.D.N.Y. 1965); and *Andrade* v. *Esperdy*, 270 F.Supp. 516 (S.D.N.Y. 1967).

The statutory aim is benign and the true stepchild should be joined with his family with the minimum of difficulty. Petitions for children are sympathetic and even the desire of the putative father to defeat the mandate of the statute is perfectly understandable. Yet the function of this Board is to interpret the statute as we believe the Congress

intended, and one cannot help but believe the Congress may not have intended the results to which a literal reading of *Palmer* v. *Reddy*, *supra*, will sometimes bring us. While *Palmer* v. *Reddy* resolves the issue, at least in the Ninth Circuit, it may not solve the problems.