MATTER OF VIZCAINO

In Visa Petition Proceedings

A-28824385

*Decided by Board April 15, 1988*

(1) In order to qualify as an illegitimate son or daughter under section 203(a) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a) (1982), one must have once qualified as an illegitimate child under section 101(b)(1)(D) of the Act, 8 U.S.C. § 1101(b)(1)(D) (Supp. IV 1986).

(2) Section 101(b)(1)(D) of the Act, as amended by the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, is applicable to all visa petitions filed after the effective date of the amendment, even if the son or daughter was over 21 at the time the new law went into effect.

(3) Section 101(b)(1)(D) of the Act, as amended, is applicable to all immediate relative petitions filed and pending at the time the change in the statute went into effect.

(4) In all cases where immigration benefits are sought by virtue of the relationship of an illegitimate son or daughter to his or her natural father, it must be shown that a "bona fide parent-child relationship" was established when the son or daughter was unmarried and under 21 years of age.

(5) Congress' expansion of section 101(b)(1)(D) to allow illegitimate children to receive or bestow immigration benefits through their natural fathers, provided a "bona fide parent-child relationship" is shown, was clearly intended as a generous provision, and it should be generously interpreted.

(6) In considering whether a "bona fide parent-child relationship" exists under section 101(b)(1)(D), the key is a genuine parent-child relationship in fact, not merely a tie by blood.

(7) To establish a "bona fide parent-child relationship," there should be a showing that the parties at some point actually lived together, or that the father held out the child as his own, or that he provided for some or all of the child's needs, or that in general the father's behavior evidenced genuine concern for and interest in the child.

ON BEHALF OF PETITIONER:
Mark R. von Sternberg, Esquire
United States Catholic Conference
902 Broadway
New York, New York 10010

ON BEHALF OF SERVICE:
Diane Reimer Bean
Acting Appellate Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

This is an appeal from a decision of the Immigration and Naturalization Service acting Regional Service Center ("RSC") director, dated July 6, 1987, denying a visa petition filed by the petitioner on behalf of the beneficiary as his unmarried son under section 203(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(1) (1982). Oral argument was heard before the Board on November 5, 1987. The appeal will be sustained and the record will be remanded to the RSC director.

The petitioner is a 63-year-old native of the Dominican Republic and a citizen of the United States. He resides in New York. The beneficiary is a 33-year-old native and citizen of the Dominican Republic. He is purported to be the son of the petitioner by a woman the petitioner never married. The instant visa petition was filed on the beneficiary's behalf on February 3, 1987.

In denying the visa petition, the acting RSC director noted that to be classifiable as a son or daughter under section 203 of the Act, a person must at some point have qualified as a child within the meaning of section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1982).[1] She then concluded that the beneficiary never qualified as the petitioner's legitimate or legitimated child, because the petitioner never married the beneficiary's mother, and both New York and the Dominican Republic require parents to marry in order to legitimate their child. See Matter of Bullen, 16 I&N Dec. 378 (BIA 1977) (New York); Matter of Reyes, 17 I&N Dec. 512 (BIA 1980) (Dominican Republic). She further found that the beneficiary could not qualify as the petitioner's illegitimate child under the provisions of section 101(b)(1)(D) of the Act, because the beneficiary was over 21 at the time the law changed to allow, under certain prescribed circumstances, petitions between illegitimate children and their fathers.

Section 101(b)(1)(D) of the Act, as amended by the Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, 100 Stat. 3359, provides as follows:

---

[1] The terms "son" and "daughter" as used in section 203 are not defined in the Act. However, since Congress, in amending section 101(b)(1)(D) of the Act, specifically required that a "parent-child relationship" with the father be shown (see discussion infra), we find that in order to qualify under that section, it must be shown that the son or daughter once qualified as a child under section 101(b)(1). Such a requirement is also consistent with long-settled law regarding stepchildren under section 101(b)(1)(B) of the Act, legitimated children under section 101(b)(1)(C), and adopted children under section 101(b)(1)(E). See, e.g., Kaho v. Ilchert, 765 F.2d 877 (9th Cir. 1985); De Los Santos v. INS, 690 F.2d 56 (2d Cir. 1982); Lau v. Kiley, 563 F.2d 543 (2d Cir. 1977); Matter of Coker, 14 I&N Dec. 521 (BIA 1974); Matter of Pagnerre, 13 I&N Dec. 688 (BIA 1971).

(1) The term "child" means an unmarried person under twenty-one years of age who is—

(D) an illegitimate child, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother or to its natural father if the father has or had a bona fide parent-child relationship with the person. . . .

Until November 6, 1986, when the Immigration Reform and Control Act became law, illegitimate children could only receive or bestow immigration benefits through their natural mothers, not their natural fathers.

As indicated above, the acting RSC director found that the beneficiary could not benefit from the change in the law because he was over 21 at the time the change went into effect. On appeal, however, the Immigration and Naturalization Service, after lengthy internal debate, now agrees with the petitioner that section 101(b)(1)(D), as amended, may be applied on behalf of persons who turned 21 before the law went into effect, so long as paternity can be established and there is a showing that a bona fide parent-child relationship existed at the time the son or daughter was under 21 and unmarried. We agree that this is the correct application of the law. The law as amended should apply to all petitions, such as the present one, filed after the effective date of the statute, even where the son or daughter was over 21 at the time the law went into effect. Moreover, we find that the amended version of section 101(b)(1)(D) should apply to all immediate relative petitions filed and pending at the time the law went into effect.[2] In all cases, it must be shown that the parent-child relationship was established when the son or daughter was unmarried and under 21 years of age. Such a showing is necessary in order to satisfy the requirement that a son or daughter must once have met the definition of "child," as discussed above.

This approach is not inconsistent with the line of cases holding that where a country or a state eliminates all legal distinctions between legitimate and illegitimate children, persons born after the effective date of the legislation are deemed legitimate children under section 101(b)(1)(A) of the Act, and persons born, and under 18 years of age, prior to the effective date are deemed to have been legitimated by the change in law. Benefits for or through such persons may be had under section 101(b)(1)(C) of the Act regarding legitimated children. See, e.g., Matter of Hernandez, 19 I&N Dec. 14

---

[2] Pursuant to Matter of Bardouille, 18 I&N Dec. 114 (BIA 1981), the new law will not be applied to preference petitions which were filed before the effective date by or on behalf of illegitimate children through their fathers. See also Matter of Atembe, 19 I&N Dec. 427 (BIA 1986); Matter of Drigo, 18 I&N Dec. 223 (BIA 1982).

(BIA 1983), and cases cited therein. In those cases, the state and foreign law changes had to be applied and examined under the unchanged provisions of the Immigration and Nationality Act. Because we have held that the change in the state or foreign law was the act legitimating these persons, we have found them to be legitimated, not legitimate, children. We have therefore held that the legitimating act (the change in law) must have occurred prior to the time the child reached the age of 18, as required by section 101(b)(1)(C). In the present situation, on the other hand, Congress itself has changed the underlying statutory definition of an illegitimate child. Moreover, unlike section 101(b)(1)(C) of the Act, section 101(b)(1)(D), regarding illegitimate children, does not include an age restriction. We therefore have no problem in applying the amended law to any person, regardless of his or her age when the law went into effect, who can establish that he or she once met the requirements for an illegitimate child.

Although the Service agrees that the new version of the law applies in this case, it is argued that the visa petition must still be denied because the petitioner has not met his burden of establishing either paternity or a "bona fide parent-child relationship" as required under the statute. The petitioner asserts that, since the acting RSC director did not mention these issues in her decision, it must be assumed that she considered these showings to have been made. Alternatively, the petitioner contends that the evidence clearly establishes both paternity and a bona fide parent-child relationship and that, accordingly, the Board should simply grant the petition.

We reject the petitioner's contention that the acting RSC director's silence on these issues shows that she considered the matters resolved, and in the petitioner's favor. Rather, it appears clear that, finding a legal basis for denying the petition, the acting RSC director simply did not reach the factual issues. Having reviewed the record, we find a remand is necessary so that the RSC director may fully consider all the evidence on this issue. On remand, the petitioner will have the burden of establishing both that he is in fact the beneficiary's biological father, and that he and the beneficiary had a bona fide parent-child relationship prior to the time the beneficiary reached the age of 21.

The term "bona fide parent-child relationship" is new in the Act, is not defined, and the legislative history is silent as to congressional intent regarding its meaning. The Service suggests that, as a starting point in defining the term, we use the "active parental interest test" set forth in *Matter of Moreira*, 17 I&N Dec. 41 (BIA 1979). In *Matter of Moreira*, we attempted to state what showing

was necessary to establish a steprelationship under section 101(b)(1)(B) of the Act. We held that where a child has not lived with a stepparent, it must be shown that the stepparent had demonstrated "an active parental interest in the child's support, instruction, and general welfare." *Id.* at 47; *see also Matter of Moreira,* 17 I&N Dec. 370 (BIA 1980). Subsequently, we retreated from the *Moreira* decisions in steprelationship cases and adopted the holding of the court in *Palmer v. Reddy,* 622 F.2d 463 (9th Cir. 1980), that because of the "unqualified language" of the stepchild provision, no qualifications beyond a valid marriage creating the steprelationship should be imposed. *See Matter of McMillan,* 17 I&N Dec. 605 (BIA 1981); *Matter of Bonnette,* 17 I&N Dec. 587 (BIA 1980).

Unlike the stepchild provision, section 101(b)(1)(D) of the Act, as amended, does carry specific qualifying language. Since Congress qualified the language, we must give some meaningful effect to it. As noted, Congress has provided no guidance as to the intended meaning of the phrase "bona fide parent-child relationship," and we shall not attempt a specific definition here. We emphasize, however, that the expansion of section 101(b)(1)(D) to include the illegitimate children of their fathers clearly was intended as a generous provision, and it should therefore be generously interpreted. At the same time, Congress did not intend to place fathers on an equal basis with mothers, or it would not have required a "bona fide parent-child relationship" only with regard to fathers.

It is obvious that Congress intended that more than mere paternity be required under the amendment. In keeping with the immigration laws' historical and ongoing concern with true family reunification, the key is the existence of a parent-child relationship in fact, not merely a tie by blood. In assessing a relationship, some evidence of emotional and/or financial ties should be shown. The factfinders should look for proof that the parties at some point actually lived together, or that the father held out the child as his own, or that he provided for some or all of the child's needs, or that in general the father's behavior evidenced a genuine concern for the child. The most persuasive evidence would be some sort of documentary evidence which was contemporaneous with the events in question, as opposed to, for example, affidavits or letters written just before or after the visa petition was filed. We recognize, however, that once parties are separated, barriers of distance, national boundaries, immigration restrictions, and, sometimes, difficulties with communications must be taken into account. Nevertheless, there should be evidence of some attempt to help support the child and/or some showing of communication with or about the child,

which evinces a genuine interest in the child. To require less would be to ignore Congress' clear language. Beyond this very general guidance, we believe the meaning of the term "bona fide parent-child relationship" is best left to be developed on a case-by-case basis. We see no need to specifically adopt the "active parental interest" standard set forth in the decisions in *Matter of Moreira, supra*.

For the reasons discussed above, the appeal will be sustained and the record will be remanded to the RSC director for further proceedings consistent with the foregoing decision.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Regional Service Center director for further proceedings consistent with the foregoing opinion.